In re: **FOUR WINDS ENTERPRISES, INC., a Virginia corporation, and its Affiliates, Debtors.**

**Bankruptcy No. 87–07954–LM11. R.S. No. 00802.**

United States Bankruptcy Court, S.D. California.

June 9, 1988.

Peter K. Nunez, U.S. Atty., Robert H. Plaxico, Asst. U.S. Atty., San Diego, Cal., for the U.S.

Donald R. Joseph, Ali M.M. Mojdehi, Loraine L. Pedowitz, McDonald, Halsted & Laybourne, San Diego, Cal., and Alan F. Wohlstetter, Stanley I. Goldman, Denning & Wohlstetter, Washington, D.C., for debtor.

Victor A. Vilaplana, Sheppard, Mullin, Richter & Hampton, San Diego, Cal., for Official Creditors' Committee.

## MEMORANDUM DECISION

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

The United States, on behalf of the Army Military Traffic Management Command ("MTMC"), has moved for relief from stay on two grounds: First, that the debtor's post-petition performance failures in the timely delivery of military household goods in international traffic requires reinstatement of a previously suspended one year disqualification; and, second, that the debtor should be suspended for its undisclosed and unauthorized pre-petition common financial and/or administrative control with another freight forwarder.

## FACTS

In March 1987, Four Winds Forwarding (debtor) was disqualified from shipping household goods in international traffic for a one-year period starting April 1, 1987, and ending March 31, 1988. MTMC disqualified the debtor primarily for its failure to meet the required delivery dates (RDD) for shipments of military household goods. Four Winds appealed the decision to the Vice Commander of MTMC and obtained a suspension of the one-year disqualification on condition that Four Winds implement certain corrective measures. In his March 31, 1987 letter, Brigadier General Charles A. Vickery notified Four Winds:

> The probationary period will end March 31, 1988. Failure to meet the MTMC performance standards at any time during the course of the probationary period ... may result in vacation of this suspension and immediate disqualification of Four Winds Forwarding without further hearing for the entire one year period.

Four Winds continued communication with Brigadier General Vickery concerning implementation of the corrective measures. It appears that at no point pre-petition did the Vice Commander of MTMC reinstitute the disqualification.

The debtor filed a Chapter 11 case on November 3, 1987. Upon filing, the Government instituted a change in the method by which it paid the debtor. Ordinarily, the debtor's invoices were paid by the Army Finance Center immediately upon presentment and without audit. Thereafter, GSA would, from time to time, conduct an audit and deduct any overcharges discovered from later billings. After the filing, because of the Government's concern that it would not be able to deduct pre-petition overcharges from post-petition billings, GSA instructed the Army Finance Center to hold all pre-petition payments to the debtor until an audit could be conducted. The Government views this as protecting its right to offset.

Although the parties differ as to the reason, the debtor's RDD performance immediately plummeted. From a pre-petition three-month average in excess of 90 percent, the debtor's RDD performance fell to 45 percent in December, 16.6 percent in January, and climbed to 60.3 percent in February and 72.5 percent in March. Starting in late December 1987, debtor's counsel and the Government agreed that $300,000 of the withheld funds could be released to the debtor (Stipulated Order entered December 23, 1987). Another $500,000 was released shortly thereafter (Stipulated Order entered January 6, 1988). Finally, in mid-January 1988, the debtor and GSA agreed that GSA could retain $500,000 of pre-petition funds pending the

result of its audit. As a result of this agreement, substantial funds held by GSA were released to the debtor.[1]

On November 9, 1987, Four Winds was notified that MTMC intended to hold a hearing on the question of whether Four Winds violated common financial and administrative control (CFAC) regulations during the volume 53 and 54 cycles (October 1986 through September 1987). The debtor and MTMC stipulated to relief from the stay for the purpose of determining the issue of common control in that hearing. In relevant part, the stipulation provides, "The hearing may proceed and its determination be implemented." An order on the stipulation was entered December 11, 1987, and the administrative hearing held on December 22, 1987. MTMC determined that the CFAC regulations were violated. The proposed punishment for the violation is to disqualify Four Winds for a period of time ending September 30, 1988. The debtor was given 15 days to appeal the decision. The Court does not know whether such appeal was taken.

The debtor, in resisting the motion for relief from stay, makes the following arguments:

1. That the withhold of pre-petition receivables by GSA was a violation of the automatic stay.

2. That the withhold of funds by GSA precipitated the debtor's post-petition RDD performance failure.

3. That post-petition RDD performance failure cannot be cause for the debtor's further disqualification without a hearing, because the original disqualification, by its terms, expired March 31, 1988.

4. That pre-petition CFAC regulation violations should not be cause for the debtor's disqualification, because the parties violating the regulations are not only no longer affiliated with the debtor, but are now adverse to the debtor.

1. $488,673.00 on January 19, 1988; $233,201 on January 21, 1988; $346,095 on January 27, 1988; $418,779 on February 3, 1988; $145,700 on February 10, 1988; $168,411 on February 17,

## ISSUES

I. Whether the withhold of all pre-petition receivables by GSA was a violation of the automatic stay.

II. Whether MTMC may disqualify the debtor because of post-petition RDD performance failures.

III. Whether MTMC may disqualify the debtor because of pre-petition CFAC regulation violations.

## DISCUSSION

### I.

█ The Government argues that, as a matter of law, withholding all pre-petition receivables payable to the debtor was not a violation of the automatic stay, citing *In re Edgins*, 36 B.R. 480 (9th Cir. BAP 1984). The Government claims that it was entitled to administratively "freeze" these funds to determine how much of the receivables, if any, were subject to offset. This Court believes that the Government reads *Edgins* too broadly.

In *Edgins*, the debtor owed the bank $12,500 on the date of filing; the bank owed the debtor his checking account balance of $7,101. The bank placed an "administrative freeze" on the checking account, precluding the debtor from withdrawing the funds. The bank argued and the BAP agreed that § 542(b) countenanced the bank's restraint of the debtor's use of the funds pending a determination of its right to setoff.

The present case is more akin to the situation in *In re Advanced Professional Home Health Care, Inc.*, 82 B.R. 837 (Bankr.E.D.Mich.1988). In that case, as here, the governmental agency (The Department of Health And Human Services) had an obligation to pay health care providers prior to audit and on at least a monthly basis. When the debtor Advanced, a home health care provider, filed Chapter 11, Blue Cross, the fiscal intermediary, withheld pre-petition monies due Advanced and con-

1988; $67,198 on February 24, 1988; $462,287 on March 2, 1988; and $89,373 on March 9, 1988.

tinued to withhold all post-petition monies due Advanced until it conducted an audit. Although decided on different grounds [2], Bankruptcy Judge Graves concluded that the withholding by The Department of Health And Human Services violated § 362(a). At pg. 842.

In this case, the Government is under a mandate to pay shippers upon presentment of bills and confirmation of completion of service. GSA Regulation 41 C.F.R. § 101–41.401 provides, in pertinent part:

(a) Section 32(a) of the Transportation Act of 1940, as amended (31 U.S.C. 3726), provides that payment for the transportation of persons or property for or on behalf of the United States by any carrier or forwarder shall be made upon presentation of bills therefor and prior to audit by the Administrator of General Services or his designee....

This was the procedure followed by the Government up to the time the debtor filed.

Upon the debtor's filing, the Government froze all payments to the debtor. There is no evidence that the Government was owed a debt by the debtor on the date it froze these payments. This action is clearly different from that taken by the bank in *Edgins*, where the bank knew the debtor owed the bank on the date of filing and had possession of a deposit which it owed the debtor that might be subject to offset under 11 U.S.C. § 553.

The Government's reliance upon the rationale of *Edgins* to protect its actions is misplaced. The basic test of a right to offset is mutuality of obligation. In order for mutuality to exist, "something must be owed by both sides." 4 *Collier On Bankruptcy* para. 553.04, p. 553–17 (15th Ed. 1984). *Edgins* should not be construed as permitting a delay in turnover of property of the estate where the entity holding that property has no idea whether the debtor owes it money. The likely effect of sanctioning such behavior is to bring an already cash-starved debtor to its knees in the early

stages of a reorganization proceeding on the outside chance that some of the debtor's pre-petition receivables might be subject to offset.

■ This Court certainly is sympathetic to the proposition that creditors with a valid debt and right of offset should not be required to turn over funds to the debtor and thereafter attempt to obtain an order barring their use. However, where, as here, the creditor does not know if *any* of the funds are subject to setoff, because it does not know whether a debt exists, this Court believes the burden shifts to the creditor to establish its entitlement to resist turnover to the debtor.

Thus, the Government's action violated the automatic stay.

## II.

On March 2, 1988, the Vice Commander of MTMC indicated his intention to reinstitute the debtor's one-year disqualification without further hearing because of the debtor's post-petition RDD performance failures. The Government seeks a determination that the stay does not enjoin this action because of the exemption contained in § 362(b)(4) or, in the alternative, relief from the stay in order to permit MTMC to execute its legitimate regulatory function.

■ Section 362(b)(4) exempts from the operation of the automatic stay those actions constituting the commencement or continuation of an action or proceeding by a governmental unit to enforce the governmental unit's police or regulatory power. The legislative history to this section supports a narrow construction of the exemption. As stated by Senator DeConcini:

This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the

---

**2.** The *Advanced* case was decided primarily on the issue of the availability of the equitable remedy of recoupment to recover a pre-petition claim from funds due the debtor pre- and post-

petition. That argument has not been raised by the parties to this motion and is not decided by this opinion.

estate. 124 Cong.Rec. 517409 (daily ed. Oct. 6, 1978).

Court decisions construing the exemption have narrowed it to those exercises of police power which are urgently needed to protect the public health and welfare. *In re IDH Realty, Inc.*, 16 B.R. 55, 57 (Bankr. E.D.N.Y.1981).

The Government submitted no evidence supporting the urgency of its need to disqualify the debtor. There are conclusory allegations in the memorandum of points and authorities to the national defense concerns of maintaining troop morale by making sure that household goods arrive on time when personnel are transferred, but even these are devoid of any evidentiary substantiation. Further, it appears that some measure of unhappiness with the prompt arrival of household goods is tolerated by the military, in that the debtor is only required to meet an 85 percent timely delivery date standard in order to remain a qualified carrier. In any event, this Court is not persuaded that MTMC's need to regulate carriers of household goods is what the drafters of the Code had in mind when enacting an exemption from stay for police or regulatory powers urgently needed to protect public health and welfare.

■ The alternative request that the Court grant relief from stay for cause to permit MTMC to disqualify the debtor because of post-petition performance failures is a closer question. Ordinarily, the Court has no concern whether a debtor's post-petition conduct breaches a debtor's post-petition duty of performance. The automatic stay simply does not apply to such problems.

Here, however, MTMC wants relief from the stay to disqualify the debtor without further hearing under a pre-petition order of disqualification which was suspended. MTMC proposes to do this on the grounds it set forth in its March 9, 1987 order of disqualification. It proposes to do this because of the debtor's post-petition RDD performance failures. The difficulty is that the March 1987 disqualification expired *by its terms* on March 31, 1988: "The probationary period will end March 31, 1988." (Letter of Brigadier General Charles A. Vickery dated March 31, 1987)

Without further hearing, MTMC now proposes to implement the disqualification for an additional one-year period:

> I am hereby vacating the suspension of your firm's disqualification from international household goods Code No. 4 shipments worldwide. That qualification will now be imposed effective _____ and run for its original period of one year, i.e., through _____.

> \*    \*    \*    \*    \*    \*

> Under those circumstances and given the major impact that movement of household goods has on the quality of life of our service personnel and their families, I must reimpose the disqualification period. This decision is final and not subject to further review by this command. (Letter of Brigadier General Vickery dated March 2, 1988.)

Usually, where an agency threatens to disqualify a government contractor without hearing and in violation of its own regulations[3], the remedy would seem to be to

---

**3.** MTMC's Regulation 15–1 provides, in relevant part:

> 6. NONUSE AND DISQUALIFICATION PROCEDURES
>
> a. Disqualification ... a carrier will not be disqualified without a board hearing including:
>
> (1) Notice of proposed disqualifications. The appropriate director will, by certified mail with return receipt requested, forward to the carrier and, if appropriate, to the carrier's known affiliates, a copy of this regulation and a notice of proposed disqualifications which will state:

> (a) That disqualification is being considered.
>
> (b) The date and time the review board will convene.
>
> (c) The reason disqualification is being considered.
>
> (d) That the carrier will have ten calendar days from the date the noticed letter is received in which to respond by telephone or in writing to the proposed disqualification....
>
> \*    \*    \*    \*    \*    \*
>
> (2) An opportunity to present information in writing, in person, or by telephone conference to the review board in response to the

order that agency to conduct its hearing and follow its regulations. *W.G. Cosby Transfer & Storage Corp. v. Froehlke*, 480 F.2d 498, 503 (4th Cir.1973); *Brooks v. Clifford*, 409 F.2d 700, 706 (4th Cir., 1969). However, it appears that ordering MTMC to conduct a hearing to consider the impact of the stay violations on its decision to disqualify would produce a foreordained result:

> In reaching this decision, I have taken into account the position that your low performance figures resulted from the General Services Administration's (GSA's) withholding of payments for purposes of offset in your firm's bankruptcy proceedings. In my view, GSA's action was both legal and foreseeable. As a result, it was incumbent upon your firm to have anticipated and/or compensated for GSA's actions. Accordingly, I find that GSA's actions do not excuse your firm's performance failures. (letter of Brigadier General Vickery dated March 2, 1988.)

Therefore, it appears to be a useless exercise for this Court to order MTMC to consider the impact of the Government's stay violations on its disqualification decision. It is clear that the debtor cannot obtain an unbiased hearing on that question before MTMC's tribunal. This Court is left with no choice but to deny MTMC relief from the stay to disqualify the debtor because of the post-petition RDD performance failures cited in its motion.

### III.

The Government's request for relief from the stay to disqualify the debtor because of pre-petition common financial and administrative control (CFAC) regulations, is based on the debtor's stipulation that MTMC's tribunal could consider at an administrative hearing the allegations raised in MTMC's November 9, 1987 notice. As noted above, the Stipulated Order Re Relief From Stay entered December 11, 1987, provided, "The hearing may proceed and its determination be implemented." Now that the debtor has received an adverse determi-

nation, the debtor is asking this Court to deny MTMC's request for relief from stay because the CFAC regulation violations occurred pre-petition and were committed by persons no longer associated with the debtor.

■ In the Court's view, the debtor makes this argument to the wrong forum. The debtor has stipulated that the determination could be made by the MTMC tribunal, has received that notice and opportunity for hearing afforded under MTMC Regulation 15–1, and apparently has or had the right to appeal from the MTMC decision. It cannot complain it has not been afforded procedural due process.

■ The policy of the Court has been to enforce stipulations entered into voluntarily and in the absence of any mistake of fact. *Matter of Springpark Assoc.*, 623 F.2d 1377, 1380 (9th Cir.1980). No cause has been shown to vary from that policy in this instance. MTMC will be granted relief from the stay to proceed with any further hearings required or to take any appropriate action in connection with the debtor's alleged pre-petition CFAC regulation violations.

### SUMMARY

■ In conclusion, this Court finds GSA's withholding of all debtor's pre-petition receivables a violation of the automatic stay. By MTMC's own findings, the stay violation precipitated the debtor's post-petition failure to meet required delivery dates for shipments of military household goods. The result of the stay violation may not be the basis for MTMC's disqualification of the debtor. MTMC is denied relief from the stay to proceed with disqualification of the debtor on the grounds of the post-petition performance failures enumerated in the letter of Brigadier General Vickery dated March 2, 1988. Finally, because the debtor has stipulated to relief from stay to permit MTMC to consider and implement any decision concerning the debtor's alleged common, financial and administrative

proposed disqualification.... (MTMC Regu-

lation No. 15–1 dated December 12, 1984.)

control regulation violations, MTMC shall have relief from stay as requested.

Counsel for debtor is directed to prepare an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.