**In re NEWPORT OFFSHORE, LTD., Confirmed Debtor.**

**Bankruptcy No. 8500723.**

United States Bankruptcy Court, D. Rhode Island.

July 20, 1988.

As Amended July 22, 1988.

---

Matthew J. McGowan, Salter McGowan Swartz & Holden, Inc., Providence, R.I., for trustee.

Richard Bicki, Providence, R.I., for debtor.

Everett Sammartino, Michael Iannotti, Asst. U.S. Attys., Providence, R.I., for Dept. of the Army.

Allan M. Shine, Winograd Shine & Zacks, P.C., Providence, R.I., for Unsecured Creditors Committee.

## DECISION AND ORDER ADJUDGING THE DEPARTMENT OF THE ARMY IN CIVIL CONTEMPT

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on November 4, 1987, on our order to show cause why the United States Department of the Army should not be held in contempt. The matter was under advisement in draft form when, in February, 1988, the District Court remanded, for further consideration, the Department of the Army's appeal of our "Decision and Order Granting Motion to Enforce Order of Confirmation and Order to Show Cause Why the Department of the Army Should Not be Held in Contempt." This Court's consideration of the instant contempt order was placed on hold, pending decision on the remanded matters, which included the following: (1) Applicability, if any, of § 524(a)(2); (2) the Army's "Rule 60 motion;" (3) prejudice to third parties regarding the setoff issue and confirmation order; (4) clarification of the October 7, 1987, order. After the April 20, 1988 hearing, our compliance with the remand order of the District Court was filed on May 24, 1988, 86 B.R. 325, and the finalization of the within decision and order was resumed.

For the convenience of readers not familiar with the travel of this ongoing dispute, a little history is in order. This Chapter 11 case was filed on November 13, 1985, and proceeded, with difficulty, to the confirmation of the Trustee's Plan of Reorganization, on April 3, 1987. During the pendency of the case, prior to confirmation, and continuing thereafter, a series of events took place which concern the Army's wrongful setoff of funds owed to the debtor by the Navy [1] and the movants' claim that the Army violated various bankruptcy laws and orders of this Court, and that in doing so, was also guilty of contempt.

A hearing was held on August 26, 1987, on said motion,[2] which was filed jointly by the Trustee, the Creditors' Committee, Allied Marine, Inc. (the investor), and Newport Offshore, Ltd. ("NOL"), the debtor. Following that hearing, on October 7, 1987, an order to show cause why the Army should not be held in contempt issued, and was heard on November 4, 1987. This procedure, although cumbersome, complies with Bankruptcy Rule 9020, we believe.

At the outset, it is our determination that this is a core proceeding within the meaning of 28 U.S.C. § 157. *See In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir. 1987). *See also In re Alan Wood Steel Co.*, 1 B.R. 167 (Bankr.E.D.Pa.1979). Although the *YR–29* contract and most of the services rendered by NOL pre-date the filing of the Chapter 11 petition, the gravamen of the contempt proceeding before us is the Army's interference with the debtor's reorganization efforts, particularly debtor's post-petition attempt to recover funds owed to the debtor by the Navy. *In re Arnold Print Works, Inc., supra; In re Alan Wood Steel Co., supra.*

Initially in this case, the Army was enjoined generally by the automatic stay (Bankruptcy Code § 362), and specifically thereafter by our order confirming the Trustee's plan of reorganization, paragraph 4, from attempting to setoff against funds

---

1. *See* our Decision and Order ... dated October 7, 1987, and Order affirming in part, dated July 13, 1988, by Boyle, C.J.

2. The August 26, 1987, hearing was on the "Motion to Enforce Order of Confirmation and Order to Show Cause Why the Department of the Army Should Not be Held in Contempt."

due from the Navy to the debtor, alleged claims by the Army against the debtor. The Army did not appeal the order of confirmation, nor did it timely request reconsideration and/or clarification of said order. On June 5, 1987, two months after the entry of the confirmation order, NOL settled its claim with the Navy on the *YR-29* contract, in the amount of $783,680, but "in accordance with the Army's [setoff] request," the Navy paid NOL only $297,796. *See* NOL Exhibit 12, Letter of M.J. McCarthy, U.S.N., to Col. Paul Woodbury, dated May 21, 1987. The Army formalized its setoff request to the Navy on July 24, 1987 in a letter from Col. Woodbury to Commanding Officer, Navy Regional Finance Center, *see* NOL Exhibit 14. It was the Army's covert inter-military communication and activity, all designed and intended to effect an eventual setoff, that the movants assert cumulatively amount to violations of the automatic stay, and thereafter, the confirmation order dated April 3, 1987. That order provides, in pertinent part:

All holders of claims whose claims are discharged by this Order, except as explicitly provided in the Plan, shall be and hereby are permanently ENJOINED from commencing or continuing any action or proceeding or employing any process against the Debtor or reorganized Debtor in an attempt to obtain partial or full satisfaction of any such claim, or from enforcing or seeking to enforce any such claim or taking any steps which will lead to enforcement against the Debtor or reorganized Debtor of any such claim or enforcement of any such claim against any property of the Debtor or reorganized Debtor, *including without limitation seeking to setoff against obligations owed to the Debtor or reorganized Debtor*, or seeking to create, perfect or enforce any lien against any property of the Debtor or reorganized Debtor

and from all other acts against the Debtor or reorganized Debtor or property of either including but not limited to those acts described in Section 362(a) of the Code. (emphasis added.)

As in virtually all Chapter 11 cases, the property of this estate has been vested in the reorganized debtor since confirmation, *see* Order of Confirmation, dated April 3, 1987, at 5, and this is the basis for our conclusion that the debtor's claim against the Navy, based on the *YR-29* contract, clearly involved property of the estate. It is also fundamental that said property remains "free and clear of all claims and interests of creditors." 11 U.S.C. § 1141(b) and (c). In this case, the Army ignored all such plain language, both statutory and Court ordered, and pursued a strategy of ex-parte setoff activity that resulted in the debtor being shortchanged in the amount of $485,884.

The arguments made by the Army to this Court, in opposition to the instant contempt proceeding, include the following: (1) it had a security interest in the funds in question; (2) the language in the amended disclosure statement preserved its setoff rights; (3) the injunctive language of the confirmation order is ambiguous; (4) said language is only "form language" or "boilerplate"; and (5) it at no time thought it was in violation of an order of this Court. We see no merit in these or any of the Army's other contentions,[3] and all are rejected.

As we have ruled previously, the Army's actions before confirmation constitute intentional violations of the automatic stay, and thereafter, the order of confirmation, and its failure to request relief from the general, as well as the specific injunctions against it, indicates clearly that from early on and at all relevant times throughout the pendency of this Chapter 11 case, the Army's private design was to remain silent, not object to confirmation,[4] and then

---

**3.** In addition to our conclusions of law herein, we also resolve all disputed questions of fact and/or credibility against the Army.

**4.** By remaining silent, the Army avoided a confrontation as to the validity and/or amount of its claim (which is hotly disputed, and which is part and parcel of NOL's claim against the Army

in this Court), without affording interested parties notice or the opportunity to be heard. This kind of extrajudicial end run is expressly prohibited by the statute and the order of confirmation, and is most irregular during the pendency of a Chapter 11 case.

to rely upon alleged ambiguity, etc., when and if called to task for its conduct. This Court is satisfied that the Army was not misled by so-called "boilerplate" language in the confirmation order or uncertainty as to its legal position, but even if that agency genuinely did have questions as to the scope or meaning of § 362, or the injunction in the order of confirmation, and if it were not playing games within its own bureaucracy, the reasonable way to proceed would be to ask for relief from stay, or at least, to seek clarification of (alleged ambiguities, before acting unilaterally, in its own interest, and to the detriment of others. 11 U.S.C. § 362(a)(7); *In re Hagan*, 41 B.R. 122, 127 (Bankr.D.R.I.1984). *See also In re Four Winds Enterprises, Inc.*, 87 B.R. 624, 17 B.C.D. 1033 (Bankr.S. D.CA.1988). The timely filing of such a motion or request would have gone a long way toward rehabilitating the Army's alleged good faith in these proceedings, and would have avoided much needless litigation and expense.[5] *Spencer Co. v. Chase Manhattan Bank*, 81 B.R. 194 (D.Mass. 1987). Instead, the defendant intentionally side-stepped all of the conventional, up front courses of action. In considering a similar, but even broader scenario, the court in *In re Heafitz*, 85 B.R. 274 (Bankr. S.D.N.Y.1988), expressed itself in a manner that is fully applicable to the matter at bench.

"Although we are in accord with AmGO's assertion that said party's action constituted recoupment, we nonetheless refuse to condone the 'self-help' tactics it used. Instead, we hold that a party seeking to exercise a proper recoupment must first seek relief from the automatic stay, 11 U.S.C. § 362. AmGO, nonetheless, asserts that recoupments are exempt from § 362. Such assertion is based on several cases in this District. *See e.g. In re Maine*, 32 B.R. 452 (Bankr.S.D.N.Y.1983); *Sapir v. Blue Cross/Blue Shield*, 34 B.R. 385 (S.D.N.Y. 1983). Other courts, however, recognize that although the exact wording at § 362(a)

does [not] refer to recoupments, *per se*, they should nonetheless be subject to the automatic stay *just as setoffs are. See In re Klingberg*, 68 B.R. 173 at 178; *see also* 11 U.S.C. § 553. (Emphasis added.)

"In *Klingberg, supra*, for instance, the District Court considered both the principles of setoffs and recoupments and states as follows:

Although we do not decide this issue, it would seem that recoupment should be subject to the stay because the purpose of the automatic stay is to give 'the debtor a breathing spell from his creditors' and to permit the debtor to attempt a repayment or reorganization plan, or simply 'to be relieved of the financial pressures that drove him into bankruptcy' without the specter of his creditors breathing down his neck. S.Rep. No. 989, 9th Cong.2d Sess. (1978), 1978, U.S. Code Cong. & Admin.News 5787. *Even though the Bankruptcy Code provides a limited exception to the discharge of all debts for certain setoffs under 11 U.S.C. § 553, the automatic stay applies to such setoffs, and a creditor may not setoff the debt without leave of the court under section 362*.... 68 B.R. at 178; *see also* 11 U.S.C. § 362(a)(7). (Emphasis added.)

"Similarly, in *In re Ohning*, 57 B.R. 714 (Bankr.N.D.Ind.1986), the court noted that the defendant trucking company which had proceeded to recoup pre-petition advances it made to plaintiff trucker 'took no steps to maintain the status quo or to seek permission of the courts to withhold earnings.' *Id.* at 716. Further, the *Ohning* court, in granting debtor's motion for summary judgment, recognized that

Any action by a creditor, such as Schneider to collect a pre-petition debt, such as the negative balance in the Ohnings' truck account, from property of the estate, such as Ohnings' post-petition earnings, is a paradigm example of the activity specifically prohibited by the au-

---

**5.** It is also apparent that, to the Army, with its seemingly limitless resources, protracted litigation and expense are much less onerous than to the debtor, its creditors, and the investor in this case. In fact, indications are strong that the

"wearing down" process is a tool readily used by big government (including the Army), in place of a meritorious position. We consider the Army's position throughout this proceeding as not even marginally justified.

tomatic stay. The Ohnings have established an intentional violation of the automatic stay.

Consequently, the court granted debtor's motion for summary judgment finding defendant's actions violative of the automatic stay.

"The court's reasoning in *Ohning* is in accord with section 362(a)(6) which prohibits 'any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under the [11 U.S.C. §§ 101 *et seq.*]' With regard to subsection (a)(6), the legislative history states:

> Paragraph (6) prevents creditors from attempting *in any way* to collect a prepetition debt.... This provision prevents evasion of the purpose of the bankruptcy law by sophisticated creditors.

House Rep. No. 95–595, 95th Cong., 1st Sess. 340–2 (1977); Senate Rep. No. 95–989, 95th Cong., 2d Sess. 49–51 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5836, 6298 (emphasis added).

. . . .

"At a minimum, when a creditor acts in violation of the automatic stay, said party is ordinarily required to turn over any property it acquires to the debtor's estate. *See United States on Behalf of IRS v. Norton*, 717 F.2d 767, 775 (3rd Cir.1983); *Matter of Haffner*, 25 B.R. [882] at 882, 889 [Bankr.N.D.Ind.1982]; *In re Klingberg*, 68 B.R. at 181.

"Furthermore, pursuant to § 362(h), 'an individual injured by any willful violation of the stay provided by this section shall recover actual damages including costs and attorneys fees, and in appropriate circumstances, may recover punitive damages.' 11 U.S.C. § 362(h). Courts, however, have interpreted the above section broadly. *See In re Inslaw, Inc.*, 76 B.R. 224, 240 (Bankr. D.Dist.Col.1987) (monetary sanctions may be imposed even for the 'inadvertent violation' of the automatic stay) *accord: In re Eisenberg*, 7 B.R. 683, 686 (Bankr.S.D.N.Y. 1980) ('actions taken in violation of the stay are void even when there is no actual notice of the existence of the stay'); *see also Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51–52 (2d Cir.

1976) *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). Additionally, in *In re AM International, Inc.*, 46 B.R. 566, 577, 578 (Bankr.M.D.Tenn.1985), the bankruptcy court held that it is not true that a legitimate dispute as to rights in property precludes a finding of willfulness of an award of compensation." *In re AM International, Inc.*, the court stated as follows:

> [Commerce Union Bank]'s mistaken belief in its right to redirect and dispose of the lockbox payments does not provide the bank with a defense to [debtor] AMI's assertions that the bank violated the stay of 11 U.S.C. Section 362.
>
> .... The proper recourse for CUB knowing of the bankruptcy filing and of AMI's right to payment under the lockbox agreement, was to *seek an adjudication* of its competing claims in the bankruptcy court.... As a sophisticated commercial institution familiar with the application and broad scope of the automatic stay, it knew *or* should have known that its actions would improperly interfere with the orderly collection and distribution of AMI's assets....
>
> It is appropriate to award costs and attorney's fees where an entity has knowingly taken action in violation of the stay.... (Emphasis added) *Id.* at 574, 578.

"Similarly, in *Cusanno v. Fidelity Bank*, 29 B.R. 810, 10 B.C.D. 793 (E.D.Pa.1983) the district court upheld an award of costs and attorneys fees against a bank that violated a stay by placing an administrative hold on debtor's checking account despite the fact that there was a conflict among courts as to whether 'freezing' a bank account violates that stay. Accordingly, the court held that

> When there exists a dispute as to the classification of a bank account, neither party has the authority to take action affecting the funds. Instead, the *party seeking to take action* concerning the funds *should first* approach the bankruptcy court and file a motion ...

.        .        .        .        .

*Even if the bank had possessed a right of setoff against the Cassanos, the bank forfeited this right by failing to seek timely relief in the bankruptcy court.* (Emphasis added)

29 B.R. at 813; *accord: Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 51 (2d Cir.1976) *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977) ($20,000 fine upheld against counsel for contractors who instituted state court writ to foreclose mechanics liens with knowledge that bankruptcy petition had been filed).

"Accordingly, in the instant case, AmGO may not use as an excuse the fact that they believed that their actions constituted valid recoupments and are exempt from the automatic stay. *See In re Tel-a-Communications Consultants, Inc.,* 50 B.R. 250, 254 (Bankr.D.Conn.1985). Like the defendant in *In re AM International, Inc.,* 46 B.R. at 566, AmGO and its attorneys are sophisticated and quite familiar with the broad application of the automatic stay. There was no effort on the part of AmGO to seek a clarification by this court as to the respective rights of the parties involved in the instant action. Consequently, we hold that AmGO acted with arrogant defiance of the law." [6]

■ As dictum only, since the Army has not raised the issue (but based on past experience, probably will do so on appeal), we note our awareness of the ruling *In re Sequoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281 (9th Cir.1987) where the Ninth Circuit Court of Appeals held that a bankruptcy judge lacked authority to issue a contempt citation. We choose to follow a different line of authority, which includes the decision of the United States District Court for the Northern District of Texas, Dallas Division, where the bankruptcy court was found to have statutory authority to issue a civil contempt order, and we adopt that court's reasons for disagreeing with the rulings that bankruptcy courts do not have

the power of contempt. "That section [§ 105] contains a broad grant of power to bankruptcy courts to insure any order, process, or judgment necessary or appropriate to carry out the provisions of Title 11.... Issuance of a civil contempt order is ... clearly within the initial grant of section 105." *Kellogg v. Chester,* 71 B.R. 36 at 38, 39 (Bankr.N.D.Tex.1987). *See also In re Haddad,* 68 B.R. 944 (Bankr.D.Mass.1987). Those courts relied heavily on the language of the statute "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. at § 105(a), and so do we. Additional authority for the contempt power of the bankruptcy court appears in the Editors' Comment (1987) to proposed Bankruptcy Rule 9020 in *Norton Bankruptcy Law and Practice,* "Bankruptcy Judges are vested with the power to enter final judgments and final dispositive orders.... It would be anomalous, indeed, that they should not have the power to enforce obedience of such judgments and orders by civil contempt...." The Fourth Circuit in the case of *Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289 (4th Cir.1986) held that there is clear authority for the bankruptcy court to impose "sanctions" for violations of the automatic stay imposed by § 362 of the Code. In that case the court chose to avoid the issue of the bankruptcy court's authority to hold offending parties in contempt, and instead proceeded on other ground, referring to the punishment as "sanctions" rather than "contempt." "Thus it appears [that if] the punishment imposed by the Bankruptcy Judge is labeled 'sanctions' and not punishment for 'contempt,' no one's sensibility [would be] offended." Editors' Comment (1987), p. 854, *supra.* In the instant case we classify the Army's behavior as we see it, and hold the Army in civil contempt for its willful violation of both the automatic stay and the Order Confirming the Plan of Reorganization.[7]

---

6. This case came to our attention on the eve of the filing of the within opinion, but because it so closely echoes the findings and conclusions already made herein, as well as our sentiments, we adopt the applicable language of the *Heafitz* decision verbatim.

7. If, on appeal, it is determined that the Bankruptcy Court does not have even civil contempt

Addressing the merits of the instant matter, the Army presented no evidence at the contempt hearing, but relied on Mr. Iannotti's prior testimony, and his argument at the show cause hearing. The Army's arguments do not address the present contempt issue, even when specifically requested by the Court to do so, but sound more like a motion for reconsideration of legal and factual issues previously decided against it. *See* Decision and Order dated October 7, 1987. And while "[t]he party seeking the contempt citation retains the ultimate burden of proof, [but] once he makes out a prima facie case, the burden of production shifts to the alleged contemnor, who must then come forward with evidence to show a present inability to comply...." *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970 (11th Cir.1986).

"Civil contempt lies for refusal to do a commanded act, while criminal contempt lies for doing some forbidden act." *Skinner v. White*, 505 F.2d 685, 688 (5th Cir. 1974). In this case the Army has engaged in a number of "forbidden acts," raising the question whether it may in fact be guilty of criminal contempt. Although the Army's conduct might well fit the standard applied in criminal contempt, we are more concerned with obtaining a constructive resolution of the question; "What does the Court primarily seek to accomplish by imposing sentence?" *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). "If the purpose is either to coerce compliance or compensate for injuries suffered by a private party, the contempt is civil. If the intent is to punish, by either fine or imprisonment, with a view toward vindicating governmental authority, the contempt is criminal." *In re Reed*, 11 B.R. 258 (Bankr.D.Utah 1981). Having primarily in mind the interests of the debtor, its employees, and its creditors, our aim is to achieve compliance with the Order Confirming the Plan of Reorganization, and to

compensate injured parties for damages resulting from the Army's willful misconduct. Accordingly, we conclude that the injunctive relief and monetary compensation available in civil contempt are appropriate here.

"Consideration by a bankruptcy court of a civil contempt motion will encompass only two issues: whether the alleged contemnor knew of the order and whether he complied with it." *Kellogg v. Chester, supra.* The Army is charged with knowledge of the automatic stay and the injunction in the order confirming the plan, and it violated both orders by its actions, which are well known by now. "Civil contempt is wholly remedial ... and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by non-compliance." *S.E.C. v. Naftalin*, 460 F.2d 471, 475 (8th Cir.1972); *Halderman v. Pennhurst State School & Hospital*, 673 F.2d 628 (3d Cir.1982); *In re Nevitt*, 117 F. 448 (8th Cir.1902). The language of the Order Confirming the Plan of Reorganization dated April 3, 1987, leaves no room for the arguments that have been advanced by the Army, notwithstanding its alleged reliance on the disclosure statement and amendments thereto. Further, the Army's contention that the injunctive language in the order of confirmation is ambiguous, has previously been rejected on both legal and factual grounds, and those arguments, as they have been repeatedly made, are without merit, and are rejected again. It is now the duty of this Court to enforce its orders, and to administer sanctions commensurate with the behavior of the Army, which, in addition to being arrogant, has seriously disrupted this reorganization proceeding. *See, e.g., Shillitani v. United States, supra; United States v. Askew*, 584 F.2d 960, 962 (10th Cir.1978); *Boyd v. Glucklich*, 116 F. 131 (8th Cir. 1902); *In re Burrow*, 36 B.R. 960 (Bankr. D.Utah 1984); *In re Reed, supra.*

---

powers, then we reluctantly defer to the *Budget Service* rationale, *supra,* and hold alternatively that the sums ordered to be paid by the Army to the debtor be referred to only as sanctions, rather than as fines for civil contempt. Also in the interest of judicial economy, in the event of

such a holding on review, this decision should be treated as proposed findings and conclusions by the Bankruptcy Court to the District Court for de novo review of the question whether to issue a contempt order. 28 U.S.C. § 157(c)(1).

As provided in our order on remand dated May 24, 1988, if it has not already done so, the Army is again ordered to withdraw its setoff request and to authorize the Navy to pay to the debtor the balance of the June 5, 1987 settlement. Failure to comply with any part of this order will result in additional fines of $1,000 per day against the Army, for each day of noncompliance after July 20, 1988.