## In re JEWELERS SHIPPING ASSOCIATION, Debtor.

### Bankruptcy No. 8800447.

United States Bankruptcy Court,
D. Rhode Island.

Feb. 28, 1989.

Edward Avila, Roberts, Carroll, Feldstein & Tucker, Providence, R.I., for debtor.

Ronald N. Cobert, Grove, Jaskiewicz, Gilliam and Cobert, Washington, D.C., for JSA Services, Inc.

Thomas J. Dillon, Schuyler, Roche & Zwirner, Chicago, Ill., for Cross Con Terminals, Inc.

## ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

■ Heard on February 14, 1989, on the motion of Cross Con Terminals, Inc. ("Cross Con"), an unsecured creditor, for authorization to examine the Custodian of Records of the debtor, Jewelers Shipping Association ("JSA"), pursuant to Bankruptcy Rule 2004, to obtain a list of "individuals or entities" whose goods were transported by Cross Con. The debtor and the unsecured creditors committee strenuously object to any such examination.[1]

In order to understand the issues raised by Cross Con's request, an explanation of the relationship between the parties and of the JSA shipping operation is in order. JSA functions as a consignor and arranges shipping contracts between its members (consignees) and independent carriers. Cross Con is one of the carriers used by JSA, and all services provided by Cross Con (including billings) were done exclusively through JSA, and never directly with its members. In fact, Cross Con has never known the identity of JSA members nor ever done business directly with them.

Upon consideration of the arguments, the relevant authorities and the particular facts in issue, we must deny Cross Con's request.

Bankruptcy Rule 2004 entitled "Examination" is a discretionary discovery device, which permits the Court to weigh the respective interests of the parties. "On motion of any party in interest, the court *may* order the examination of any entity." Bankruptcy Rule 2004(a) (emphasis added).

On July 28, 1988, we entered an order protecting the JSA membership list, as confidential commercial information. Although Cross Con argues that it is not seeking a list of JSA's members, that is precisely what it would obtain if the requested examination were authorized.[2] "Examinations under Rule 2004 will not be permitted where the court determines that while the entity seeking the examination is generally entitled to the Rule's broad utility, the circumstances do not justify the granting of a motion to conduct such an examination, given its proposed scope." 6 Bankr.L.Ed., Rules Commentary and Analysis § 52:21, p. 31. Here, an examination by Cross Con would necessarily lead into matters held confidential by our July 28 Order and therefore, cannot be allowed. Cross Con's assurances that the list would be kept confidential are illusory, given the adversary stance it has taken in the case.

■ In addition, we have difficulty, on equitable grounds, with Cross Con's argument that it is entitled to seek payment for services directly from the members, where those members have already paid JSA for the same services. We are persuaded by JSA's argument that once Cross Con chose to conduct business exclusively with JSA,

---

1. Recent correspondence to the Court by the Creditors' Committee and Thomas Dillon, Esq., the movant's attorney, did not add to or change any of the positions advanced by the parties during the February 14 hearing.

2. Although Cross Con is not attempting to collect from everyone on the membership list, even a partial invasion of the debtor's customer roster would violate and render meaningless our July 28, 1988, Order.

rather than with individual members, and thereafter elected to pursue its claim in bankruptcy, it should now be estopped from collecting directly from JSA members. This argument gains additional momentum since the debtor has made provision for Cross Con's claim under its plan of reorganization.

■ We also reject Cross Con's argument that *Metro Shippers, Inc. v. Life Savers, Inc.*, 509 F.Supp. 606 (D.N.J.1980) is applicable under the circumstances before us. Not only was *Metro Shippers* not a bankruptcy case (with no automatic stay in effect), but in 1980, shippers associations were governed by Interstate Commerce Commission regulations, which specifically required disclosure of association members. [49 U.S.C. § 1001, et seq., revised as 49 U.S.C. § 10562; 49 CFR § 1320.1.] Here, JSA is in bankruptcy; the section 362 automatic stay provisions which were in effect until confirmation, have been replaced by a permanent injunction;[3] the debtor is actively collecting accounts receivable from

its members and paying creditors in accordance with the approved reorganization plan; the ICC regulations do not apply;[4] and there is no requirement for membership disclosure. Therefore, the holding in *Metro Shippers, supra,* is inapplicable to the facts in issue here.

Our ruling denying an examination of the debtor is not prejudicial to Cross Con, since it remains in the same position as all other unsecured creditors, who are being paid over time, pursuant to the approved plan. To allow Cross Con to obtain a list of JSA members, and thereafter press collection against them, would directly and detrimentally interfere with the reorganization, and would permit Cross Con to achieve an unfair advantage over the other similarly situated creditors.[5]

■ Cross Con's zealousness in pursuing its chosen route, by filing the deposition notice on Crown Terminals without the prior authorization of this Court, is a clear violation of the automatic stay[6] which subjects Cross Con to sanctions.[7] *In re New-*

---

**3.** On January 31, 1989, we entered the Order of confirmation for the plan of reorganization. The effect of that order was to vacate the automatic stay, *see* § 362(c), and replace it with a permanent injunction under § 524(a).

> 11 U.S.C. § 524(a)(2) provides that:
> (a) A discharge in a case under this title—
> ....
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of said debt is waived;

The legislative history to § 524(a) describes the types of actions restrained by this injunction:

> Subsection (a) ... operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, including telephone calls, letters and personal contacts, to collect, recover, or offset any discharged debt.... The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1978); S.Rep. No. 989, 95th Cong., 2d Sess. 80 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5866, 6321.

This injunction clearly precludes Cross Con's attempt to obtain membership disclosure in or-

der to pursue claims against members who have already paid JSA.

**4.** Surface Freight Forwarder Deregulation Act of 1986, Pub.L. No. 99–521, § 6(d)(1), 100 Stat. 2994 (1986) repealed 42 U.S.C. § 10562 and amended § 10521(a) to exclude "freight forwarder" from ICC jurisdiction.

**5.** The damaging effect of such an examination does not require much imagination. Other creditors would follow suit—this would certainly injure the already fragile member structure of the JSA operation, once the identification of members has been accomplished, and subjecting them to double liability, or at least the threat of it. What newly emerged Chapter 11 debtor needs that?

**6.** Cross Con served the notice of deposition on Crown Transportation on December 16, 1988, with the examination scheduled for January 5, 1989. The automatic stay was in effect until January 31, 1989 when, upon confirmation, it was replaced by a permanent injunction.

**7.** We also agree with the reasoning and conclusions of the bankruptcy court in *In re Brilliant Glass,* 99 B.R. 16, 17–18 (Bankr.C.D.Cal. 1988), that (1) the shipper [consignor], rather than the consignee, is primarily liable to the carrier for freight charges; and (2) that sanctions are ap-

*port Offshore, Ltd.*, 88 B.R. 566 (Bankr.D. R.I.1988); *In re Chateaugay Corporation*, 78 B.R. 713 (Bankr.S.D.N.Y.1987).

Accordingly, JSA and JSA Services may file, within ten (10) days, an application detailing the services required to oppose the discovery sought by Cross Con.

Enter Judgment accordingly.

propriate where a creditor willfully violates the automatic stay.