In re **JARRETT RANCHES, INC.,** Debtors.

**JARRETT RANCHES, INC.,** Jarrett Elevators, Inc.; Donald D. and Jeannine Jarrett, husband and wife; and Ronald R. and Jacqueline Jarrett, husband and wife, Plaintiffs,

v.

**FARM CREDIT BANKS OF OMAHA,** Production Credit Association of the Midlands and Federal Land Bank Association of Aberdeen, Defendants.

Bankruptcy No. 88–10117.
Adv. No. 89–1001.

United States Bankruptcy Court,
D. South Dakota.

Aug. 16, 1989.

See also, Bkrtcy., 107 B.R. 963.

Norman J. Baer, Minneapolis, Minn. and Philip Morgan, Britton, S.D., for plaintiffs.

Brent A. Wilbur, Pierre, S.D., for defendants.

## MEMORANDUM DECISION

IRVIN N. HOYT, Chief Judge.

The Court has before it Farm Credit Bank of Omaha's (FCBO) motions for summary judgment in the above captioned matter. After considering the evidence, briefs, and arguments, of counsel, the Court is prepared to render its decision.

The undisputed facts are as follows: In August, 1988, the Jarrett family, on behalf of Jarrett Elevators, Inc. and Jarrett Ranches, Inc., entered into a settlement

agreement with the Federal Land Bank of Omaha and the Production Credit Association of the Midlands (hereinafter referred to as FCS). The agreement performed several functions including: (1) dismissal with prejudice of several state court actions, (2) turnover of certain machinery to FCS, (3) Jarretts' retention of eight quarters of land free of any FCS liens, (4) FCS's assistance to Jarretts with the tax aspects of their Chapter 11 plan, (5) forbearance by FCS from seeking deficiency judgments against Jarretts, (6) Jarretts waiver of restructure rights under the Agricultural Act of 1987 concerning real estate in South Dakota subject to a Federal Land Bank mortgage, and (7) Jarretts' waiver of restructure and repurchase rights under the Act concerning similarly mortgaged property in North Dakota.

This Court, on November 28, 1988, entered an order approving all aspects of the settlement agreement. There was no resistance to entry of the order and no appeal concerning the order was taken within the prescribed time frame.

In December, 1988, the individual Jarretts and Jarrett Elevators, Inc. conveyed their interest in the South Dakota and North Dakota properties to Jarrett Ranches, Inc. Jarretts and their corporate entities then conveyed certain of the real estate to the Production Credit Association of the Midlands and the remainder to Farm Credit Bank of Omaha. On February 3, 1989, FCBO gave notice to Jarretts of its intention to sell the property.

Jarretts commenced an adversary action against FCBO on March 24, 1989. Jarretts claim that: (1) FCBO failed to comply with certain notice provisions of the Agricultural Credit Act of 1987, Pub.L. No.100–233, 101 Stat. 1568–1718 (1987), (2) Jarretts' waiver of rights concerning the North Dakota property was void, (3) FCBO failed to properly appraise the subject property, and (4) FCBO's proposed sale of the property violated the Act. All claimed violations fall under § 108 of the Act, codified at 12 U.S.C. § 2219a.

FCBO answered Jarretts' complaint on May 1, 1989. On May 10, FCBO moved for judgment on the pleadings and for summary judgment. Both parties submitted memoranda supporting their various arguments. FCBO's motion for judgment on the pleadings was denied this same date.

## I. Summary Judgment

Summary judgment is authorized by Federal Rule of Civil Procedure 56 and Bankruptcy Rule 7056 when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Summary judgment should not be viewed as a disfavored procedural shortcut, but rather as an important method to be used to secure the just, speedy and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the movant to demonstrate that no genuine issue of material fact exists, and the non-moving party is entitled to all reasonable inferences to be taken from the evidence. *Savage v. Snow*, 575 F.Supp. 828 (S.D.N.Y.1983).

This case is currently in an interesting procedural posture. FCBO, the movant here, asserts that no genuine issues of material fact exist and that it is entitled to a judgment in its favor as a matter of law. Jarretts, who have made no formal motion for summary judgment, concur that no fact issues exist, but claim that they, rather than FCBO, are entitled to summary judgment. Jarretts first made this claim in their memorandum in opposition to FCBO's motions for summary judgment dated May 25, 1989.

When there has been a motion for summary judgment but no cross-motion, the Court is already engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for entry of such judgment. 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720 (1983). Granting summary judgment for the non-movant may be proper if both sides agree that there are no issues of material fact. However, the fact that both parties argue that

no factual issues exist does not automatically establish that a trial is unnecessary and that the Court is empowered to enter judgment. *Id. See also, Wermager v. Cormorant Township Board,* 716 F.2d 1211 (8th Cir.1983). The weight of authority suggests that summary judgment may be rendered in the non-movant's favor regardless of the fact that no formal cross-motion was made. *Lowenschuss v. Kane,* 520 F.2d 255 (2nd Cir.1975), *Local 33, International Hod Carriers Building & Common Laborers' Union of America v. Mason Tenders District Council of Greater New York,* 291 F.2d 496 (2nd Cir.1961) ("[I]t is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had defendant made a cross-motion for summary judgment." *Id.* at 505). *See also* cases collected in Wright, Miller & Kane, *supra,* at note 20.

■ In a large sense, entry of summary judgment for a non-movant in the absence of a formal cross-motion is in keeping with Rule 56's objective to expedite the disposition of cases and with Rule 54's requirement that a court grant the relief to which a party is entitled even if the party has not demanded such relief in his pleadings. Wright, Miller & Kane, *supra.* In this case, Jarretts have informally requested that summary judgment be granted in their favor. FCBO has been provided with notice of Jarretts' request and has not responded to the same. Given the fact that FCBO knew of Jarretts' request, *Williams v. City of St. Louis,* 783 F.2d 114 (8th Cir.1986), and that the interests of the parties and judicial economy would be served by consideration of Jarretts' request, this Court holds that Jarretts may receive a summary judgment in their favor regardless of their failure to bring a formal cross-motion. Thus, the Court may, if all requirements for summary judgment are met, grant such judgment for either FCBO or Jarretts.

## II. Waiver

FCBO first submits that it is entitled to summary judgment concerning Jarretts' waiver of their right to restructure or repurchase their North Dakota property. Jarretts claim that the waiver of these rights is void as a matter of law or alternatively that FCBO should be estopped from demanding enforcement of the waiver because FCBO offered Jarretts the right to repurchase *after* previously securing the waiver. Thus, Jarretts submit that summary judgment should be granted in their favor. FCBO claims that waiver of these rights was not void and that the matter is *res judicata* per this Court's approval of the settlement agreement.

■ Jarretts first claim that their waiver was void as a matter of law because allowing such waiver of statutory rights to restructure and/or repurchase "flies in the face of congressional intent." Relying on *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), Jarretts assert that their restructure and repurchase rights under the Agricultural Credit Act of 1987 may not be waived or released. This Court has no quarrel with *Brooklyn Savings Bank's* statement that "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy," and that "[w]here a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy it was designed to effectuate." *Id.* at 704, 65 S.Ct. at 900 (citations omitted) (footnote omitted). However, unlike the Fair Labor Standards Act (which was the legislation construed in *Brooklyn Savings Bank* ), or the protection afforded under the Bankruptcy Code (the subject of *United States v. Royal Business Funds Corp.,* 724 F.2d 12 (2nd Cir.1983)), this Court is not convinced that the Agricultural Credit Act is one of those statutes which contains a strong public interest component. Rather it appears that the Act is intended to provide credit to qualified agricultural borrowers and to shore up the ailing Farm Credit System. Thus, the Court concludes that Jarretts' waiver of the right to restructure or repur-

chase under the Act was not void as a matter of law, and that Jarretts voluntarily abandoned their rights. *In re Zirpel*, 53 B.R. 422 (Bkrtcy.D.S.D.1985).

■ Jarretts next contend that FCBO should be estopped from demanding enforcement of the waiver because FCBO extended Jarretts the right to repurchase the North Dakota property *after* the settlement agreement had been executed. Estoppel requires a "representation, to a party without knowledge of the facts and without the means to ascertain them, upon which the party asserting the estoppel justifiably relies in good faith to his detriment." *U.S. v. Schoenborn*, 860 F.2d 1448, 1452 (8th Cir.1988) (citation omitted).

Testimony received from Donald Jarrett and Don Kettering of FCBO at the March 29, 1989, temporary restraining order hearing was to the effect that FCBO, at a February 3, 1989, meeting with Jarretts, granted Jarretts the opportunity to submit a bid for the entire ranch (both North and South Dakota), and FCBO stated that it would consider such a bid. FCBO's invitation was good for thirty days. Jarretts made a bid for the entire property within the stated time frame. Three days later, Jarretts received a letter stating that FCBO's invitation was cancelled and that Jarretts now retained their Ag Credit Act rights with respect to the South Dakota property only, thus in essence attempting to reinstate the terms of the original settlement agreement.

FCBO's actions in this respect amounted to a representation to Jarretts that the North Dakota property was "back on the table" and that Jarretts could submit a bid to repurchase the property in both states. Jarretts had no reason to question the authority of FCBO's agents to make the repurchase invitation and justifiably relied on that invitation, in good faith and to their detriment, when they assembled their proposal to repurchase the property. Jarrett's actions included securing an interested financial backer, travelling to Omaha, engaging in good faith negotiations, and, at the suggestion of FCBO, submitting an offer to purchase the entire property in order to maintain their § 2219a rights.

The Court notes that FCBO was not required to extend to Jarretts the right to repurchase the entire property. However, once FCBO made that invitation, upon which Jarretts acted in good faith, FCBO cannot, as it attempted, simply "cancel" such invitation and attempt to reinstate the prior settlement. Attendant with FCBO's invitation was the re-extension of Jarretts' § 2219a rights under the Act relative to the North Dakota property. FCBO could not later unilaterally rescind the extension of those rights, even after it cancelled its offer. Simply put, FCBO's invitation to Jarretts to bid on the entire ranch opened the door for Jarretts to seek the protection afforded under the Act. This Court cannot condone FCBO's action of first acquiring Jarretts' § 2219a rights during the settlement negotiations, its subsequent invitation to Jarretts to exercise those same rights which Jarretts had previously waived, and a later cancellation of that invitation after Jarretts had submitted a repurchase proposal in good faith. The Court concludes that such actions taken by FCBO estop it from now enforcing the settlement agreement, ignoring its subsequent invitation, and in essence attempting to overlook the occurrence of this entire episode.

### III. Method of appraisal

The Court is next asked to determine whether FCBO acted properly when it appraised the Jarrett property in parcels rather than as a whole and whether FCBO properly determined the fair market value of the Jarrett property.

1. Whether FCBO acted properly in appraising the property in parcels rather than as a whole.

Jarretts claim that FCBO contravened the Act when it decided to appraise the ranch in 59 parcels rather than as one unit. FCBO, in its motion for summary judgment, claims that appraisal in separate tracts complies with the provisions of the Act. According to FCBO, the Ranch was divided into 59 parcels of roughly equiva-

lent value because it believed that no single entity existed that could purchase the entire ranch. The total value assigned to the 59 parcels by FCBO was $5,744,600.00. The evidence clearly indicates that FCBO intended to sell the *entire* Jarrett Ranch rather than only certain portions thereof.

■ 12 U.S.C. § 2219a(b)(1) provides: Within fifteen days after an institution of the System first elects to sell *acquired real estate, or any portion of such real estate*, the institution shall notify the previous owner by certified mail of the owner's right—

    (A) to purchase the property at the appraised fair market value of the property ...

Resolving statutory interpretation disputes "begins where all such inquiries must begin: with the language of the statute itself. Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *In re Ehrich*, 109 B.R. 390, (Bkrtcy.D.S.D.1989), *quoting United States v. Ron Pair Enterprises, Inc.*, — U.S. —, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), *and Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917). The Court interprets § 2219a(b)(1) to require that property must be sold as one unit in those cases where an institution of the system elects to sell the *entire* property. Since FCBO has elected to sell the entire Jarrett Ranch, it thus must attempt to sell the ranch as a whole. FCBO claims that any attempt to sell it as one unit would be in vain because of the non-existence of any buyers for that large of a parcel. FCBO's point is well taken; however, proof of the existence or non-existence of any potential buyers would best be tested by simply attempting to sell the entire property. The receipt of any offers or the absence of such receipt would certainly establish whether any such buyers indeed do exist. Hence, FCBO, having elected to sell the entire ranch, will be directed to offer the Jarrett property as one unit.

    2.    Whether FCBO properly determined the fair market value of the Jarrett Property.

■ Jarretts next claim that FCBO erred when it determined that the fair market value of the property was $5,744,600.00. As noted earlier, FCBO arrived at this figure by adding together the fair market values of each of the proposed 59 tracts of land. Having earlier concluded that FCBO's plan to sell the property in separate tracts was contrary to the Act, the Court now concludes that any appraisal predicated on such individual sales is invalid and that the proper determination of the fair market value of the property requires that it be appraised as a whole.

Previous appraisals of the entire Jarrett property have been undertaken. A February, 1987, appraisal of the property then owned by Jarretts (which at that time totalled 35,212 acres) set the value of the land at $4,115,400.00. A May, 1988, appraisal performed at the request of FCBO, covering 33,275 acres of Jarrett land, arrived at a fair market value of $4,616,800.00. As was shown on Temporary Restraining Order Hearing Exhibit 13, a downward adjustment to delete the value of chattels and the value of eight quarters of land which Jarretts received free and clear of any Farm Credit liens under the settlement agreement resulted in an adjusted value of $4,231,600.00 for the land which was transferred to FCBO. This figure was also supplied to Jarretts in early 1989 when Jarretts received IRS Form 1099 from FCBO. The form indicated that the fair market value of the property transferred to FCBO was $4,797,490.00. A February 24, 1989, letter from the Loan Servicing Manager of FCBO's Accounting Services Department explained that "the fair market value of $4,797,490.00 consists of real estate of $4,231,600.00 and $565,890.00 personal property."

This value has been adopted by FCBO by virtue of its acceptance of the settlement agreement and by virtue of the amount indicated by it on IRS Form 1099. Jarretts have accepted this figure as the fair market value of the property. The $4,231,-

600.00 figure supplied by FCBO will be adopted by the Court as the fair market value of the entire Jarrett property. The Court recognizes that approximately two months passed between the transmittal of the $4.2 million figure via the 1099 and FCBO's notice to Jarretts of its intention to sell the property for $5.7 million. As an accommodation to FCBO, the Court will afford it the opportunity to submit any rationale that it may possess to substantiate the claimed $1.5 million increase in value during this two month span.

In conclusion, the Court finds that the method of appraisal employed by FCBO was improper, and summary judgment in its favor will thus be denied. FCBO, having previously indicated its intent to liquidate the entire Jarrett property, will be ordered to offer the Jarrett property as a single unit. For purposes of the sale of the entire ranch, and in the absence of any justification to account for an increase in value, the Court adopts $4,231,600.00 as the fair market value of the Jarrett Ranch.

### IV. Method of Sale

■ The next issue is whether FCBO's proposed sale complied with the requirements of the Agricultural Credit Act. In its motion for summary judgment, FCBO claims that its method of sale was proper and did not deprive Jarretts of any rights pursuant to the Act. Jarretts disagree.

The proposed method of sale, according to FCBO, was as follows:

1. The subject property was to be sold one tract at a time. Interested individuals were to submit an offer on that tract through a realtor. If Jarretts wished to bid on a particular tract, they were required to submit an offer.

2. If more than one offer on a particular tract was received, then all persons making an offer would be invited to a "bid off" room. The bidders would then engage in a bid off, with bids to be increased in $500.00 minimum increments.

3. Once the high bid was received, Jarretts would be notified of their right to match the high bid. Jarretts would then be given a "reasonable opportunity" to consider and match the bid. If Jarretts matched the bid, the bid off would continue between the high bidder and Jarretts.

4. Once the above described process was completed, it would be repeated on the remaining tracts. Twenty tracts would be sold each day.

5. The appraised value of each tract would be posted and disclosed to Jarretts prior to the sale in order to give them a reasonable opportunity to contact lenders and arrange financing. This disclosure would also be available to any other potential bidders so that they could also arrange their financing.

12 U.S.C. § 2219a(b)(5) provides:
Rejection of offer of previous owner. (A) Duties of institution. An institution of the System that rejects an offer from the previous owner to purchase the property at a price less than the appraised value may not sell the property to any other person—
(i) at a price equal to, or less than, that offer by the previous owner; or
(ii) on different terms and conditions than those that were extended to the previous owner,
without first affording the previous owner an opportunity to purchase the property at such price or under such terms and conditions.
(B) Notice. Notice of the opportunity in subparagraph (A) shall be provided to the previous owner by certified mail, and the previous owner shall have fifteen days in which to submit an offer to purchase the property at such price or under such terms and conditions.

12 U.S.C. § 2219a(d) provides:
Public offerings. (1) Notification of previous owner. If an institution of the System elects to sell or lease acquired property or a portion thereof through a public auction, competitive bidding process, or other similar public offering, the institution shall notify the previous owner, by certified mail, of the availability of the property. Such notice shall contain the minimum amount, if any, required to qualify a bid as acceptable to the institu-

tion and any terms and conditions to which the sale or lease will be subject. (2) Priority. If two or more qualified bids in the same amount are received by the institution under paragraph (1), such bids are the highest received, and one of the qualified bids is offered by the previous owner, the institution shall accept the offer by the previous owner.

One need not look far to notice that serious contradictions exist between the bidding process proposed by FCBO and the requirements of the statute. Under the proposed method of sale, FCBO planned to notify the high bidder within one working day if the high bid would be accepted. See Temporary Restraining Order Hearing Exhibit 9. Under § 2219a(b)(5), a previous owner has fifteen days in which to submit an offer to purchase property when such property is sold on different terms and conditions than those that were previously extended. Moreover, this method of sale cannot take into account whether the aggregate sale price of the 59 parcels would be more or less than the $4,231,- 600.00 originally offered by Jarretts. Finally, it is clear that the proposed method of sale is in violation of § 2219a(d). The plan of sale contemplates that Jarretts, if they matched a high bid at a bid off, would be required to continue in that bid off in order to purchase the property. Under the statute, if two bids in the same amount are received by the institution and one bid is offered by the previous owner, the institution is required to accept the offer by the previous owner without the necessity of any further bidding. The Court finds that the discrepancies between the proposed bidding process and that contemplated by the statute are such that FCBO's motion for summary judgment concerning the method of sale must be denied. FCBO is hereby directed to afford Jarretts the opportunity to purchase the entire property in strict compliance with the Agricultural Credit Act.

## V. Conclusion

To summarize, the Court finds that summary judgment may be rendered in favor of either FCBO or Jarretts so long as ei-

ther party meets the elements required for granting summary judgment. Further, the Court finds that FCBO is estopped from enforcing Jarretts' waiver of rights to restructure and/or repurchase concerning the North Dakota property, that the method of appraisal employed by FCBO contravenes 12 U.S.C. § 2219a(b), and that the method of sale proposed by FCBO contravenes 12 U.S.C. § 2219a(b) and (d). Summary judgment for FCBO will thus be denied in all respects.

The Court, based upon the foregoing, grants summary judgment to Jarretts on the waiver issue. The Court further finds that the fair market value of the property transferred from Jarretts to FCBO to be $4,231,600.00, absent any justification from FCBO to account for any increase in value between November 28, 1988 and February 3, 1989. Finally, the Court declares that FCBO's proposed method of sale violates 12 U.S.C. § 2219a(b) and (d) that FCBO is hereby required to afford Jarretts the opportunity to repurchase their entire property in strict compliance with the Agricultural Credit Act of 1987.

Because the Court finds the foregoing issues to be determinative, it will not consider the other issues submitted by the parties, including the motions to bifurcate and continue and the counterclaim submitted by FCBO. This constitutes the Court's findings of fact and conclusions of law in this matter. This is a core proceeding under 28 U.S.C. § 157(b). The Court will enter an order in conformance with this opinion.