In re David E. NELSON and Marsha R. Nelson, Debtors.

Bankruptcy No. 90–40163–PKE.

United States Bankruptcy Court, D. South Dakota, S.D.

Feb. 13, 1991.

Rick A. Yarnall, Chapter 7 Bankruptcy Trustee, Sioux Falls, S.D., for the Bankruptcy Estate of David E. Nelson and Marsha R. Nelson.

Michael J. McGill, Beresford, S.D., for debtors David E. Nelson and Marsha R. Nelson.

Marsha K. Stacey, Asst. U.S. Atty., Sioux Falls, S.D., on behalf of the U.S., Farmers Home Admin.

John A. Schlimgen, Stuart & Gerry, Sioux Falls, S.D., for Tenant Gerald Fitzgerald.

Phillip O. Peterson, Beresford, S.D., for Potential Buyers Neil and Nancy Shuck.

Charles L. Nail, Jr., Assistant U.S. trustee, Sioux Falls, S.D.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### ACTION

This decision adjudicates objections filed to the Chapter 7 Trustee's notice of proposed action to sell real property free and clear of liens and encumbrances. The action pits two different bodies of federal law against each other: bankruptcy law and U.S. Department of Agriculture loan subsidies. After analyzing relevant provisions of the Bankruptcy Code and agricultural regulations as articulated below, the Court concludes that both bodies of law complement each other but the sale cannot be presently approved. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Decision constitutes Findings of Fact and Conclusions of Law pursuant to Bankr.R. 7052.

### FACTUAL BACKGROUND

In 1984, David and Marsha Nelson (Nelsons or Debtors) received a loan on a 60–acre farm in Union County. The property consists of 40 tillable acres and 20 acres of buildings and grazing pasture. Debtors' financial problems forced them to move into the town of Beresford in 1985.

From 1986 through 1990, Debtors sporadically entered into custom farming arrangements with Gerald Fitzgerald (Fitzgerald). Fitzgerald, no stranger to the Court himself, filed a Chapter 11 petition

on March 27, 1986, subsequently converted to Chapter 7, received a debt discharge on April 20, 1988, and the case was closed on November 15, 1990. Not one of the testifying witnesses provided consistent testimony concerning any type of leasing arrangement for 1990. Tangible indications of any Fitzgerald/Nelson arrangement include: an unsigned lease dated May, 1990; the 11 U.S.C. § 341 Trustee's meeting record noting a lease of $4,000 would occur for 1990; an unnegotiated $600 check from Fitzgerald, designated for rent, which is held by Chapter 7 Trustee Rick A. Yarnall (Trustee); and a plethora of letters stating inconsistent lease terms.

Debtors' counsel's September, 1990, letter indicates the parties did not have a lease agreement, and no lease approval motion ever occurred before the Court. Inconsistent testimony of both David Nelson and Fitzgerald; an absence of any written document; no lease motion made pursuant to 11 U.S.C. § 363; and the $600 arriving after the farming season, fortuitously on the dawn of Trustee's proposed sale of the Nelsons' farm, compel the Court to find that no meeting of the minds existed on a 1990 farm lease. Neither custom farming nor David Nelson's employment as head custodian of the Beresford Public School District solved Debtors' financial woes.

Farmers Home Administration (FmHA) Union County Supervisor Jim Rydell counseled the Debtors in 1986 while reviewing the mortgage's delinquency. In 1987, the FmHA sent out an intent to take adverse action, but such actions were stayed by a nationwide moratorium on FmHA farm foreclosures. After the moratorium was lifted, the Debtors received a 1951 servicing notice from the FmHA in November, 1988. FmHA sends the notice to borrowers who are more than 180 days delinquent. The notice gives borrowers 45 days to respond in order to apply for primary and secondary loan programs. The Nelsons did not respond. A second notice, sent in April, 1989, concerning the Debtors' delinquent FmHA loan, drew no response, either. The county supervisor spoke with the Debtors in September, 1989, regarding an attempt to cure the delinquent loan, but nothing was accomplished at the meeting. In November, 1989, the FmHA District Director sent out an acceleration notice and sought mediation under South Dakota law. Debtors did not participate.

Debtors filed Chapter 12 on March 26, 1990. On April 6, 1990, Debtors' counsel received a notice from the FmHA offering loan reservicing but requiring negotiations for loan reservicing options be preceded by a lifting of the automatic stay or dismissal of the case. Debtors' Chapter 12 converted to a Chapter 7 case on August 9, 1990, because the Nelsons did not have more than 50 percent of gross income arising out of farming operations pursuant to 11 U.S.C. § 101(17)(A), and they received a debt discharge on November 21, 1990.

On October 5, 1990, the Court approved a stipulation between the FmHA and Trustee to sell the Debtors' farm, consisting of 60 acres. An appraisal, conducted at the Trustee's request, valued the land at $925.00 an acre. FmHA's mortgage of about $215,000.00 exceeded the farm's $55,500.00 fair market value. Trustee advertised the sale for several weeks in a local newspaper and received a bid of $925.00 an acre from Neil and Nancy Shuck. Trustee next motioned to sell the property free of all encumbrances and requested any objections be filed. The Debtors objected to the sale after they saw the newspaper advertisement on their farm.

Debtors concede they are not entitled to be treated as borrowers, with personal obligations due the FmHA, but assert eligibility for secondary programs, such as lease back and buy back programs, under the 1987 Agricultural Credit Act. Fitzgerald objects, claiming he has rights as a lessee.

### ISSUES

I. Can the Bankruptcy Code and the Agricultural Credit Act of 1987 coexist and complement each other? Yes.

II. Did the FmHA violate the automatic stay by sending a post-petition letter to the Debtors to the extent the letter purports to limit the Debtors' rights? Yes.

III. Is the Trustee's sale of property, encumbered by the FmHA, a foreclosure activity entitled to Act protections? Yes.

IV. Do any rights exist under the Act; if so, which rights? Yes, preservation programs.

V. May a Chapter 7 trustee sell FmHA-encumbered property provided all Act obligations are satisfied? Yes.

## LAW

### I. Coexistence of Different Bodies of Law.

■■■ Where two statutes are capable of coexistence, a court must give effect to each. *U.S. v. Stauffer Chem. Co.*, 684 F.2d 1174, 1184 (6th Cir.1982), *aff'd on other grounds*, 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984); *In re Bludworth Bond Shipyard, Inc.*, 93 B.R. 520, 522 (Bankr.S.D.Tex.1988). Both statutes must be given effect provided their sense and purpose can be preserved. *Watt v. Alaska*, 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). Narrower, more specific statutes take precedence over contrary general ones unless the court finds a clear congressional intention supporting the general over the specific. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987); *Busic v. U.S.*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976). The Bankruptcy Code ("Code") and the U.S. Department of Agriculture loan subsidy programs are two distinct bodies of law.

Traditionally, the two approaches to statutory construction are literalism and legislative intent or purpose. *In re Shannon*, 100 B.R. 913, 917–18 (S.D.Ohio 1989); W. Marshall, *Federal Jurisdiction in Flux*, 22 Conn.L.Rev. 617 (Summer, 1990, No. 4). Ferreting out Congress' intent and the plain statutory language discerns the coexistence of bankruptcy and farmer loan subsidy programs.

■■■ FmHA's debt restructuring programs are part of the Agricultural Credit Act of 1987 ("Act"), Pub.L. No. 100–233, 101 Stat. 1568–1718 (amending the Farm Credit Act of 1971, codified at 12 U.S.C. § 2001, *et seq.*). The Act intends to provide FmHA borrowers "a fair opportunity to overcome their credit problems without adversely affecting creditor rights." H.R. Rep. No. 295(I), 100th Cong., 1st Sess., *reprinted in* 1987 U.S.Code Cong. & Admin.News 2723, 2724. The Code's central purpose is the fresh start: a new opportunity in life for the honest but unfortunate debtor to reorder financial affairs with a clear field for the future, unhampered by preexisting debt's pressure and discouragement. *See Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The Code and the Act complement each other in an attempt to rehabilitate fiscally ill debtors. The bodies of law differ in that debt relief is greater in bankruptcy and Congress enjoys exclusive jurisdiction to derive uniform bankruptcy law. U.S. Const. art. 1, § 8, cl. 1. If specific Code provisions conflict with the Act, the Code takes precedence. *Matter of Arthur*, 86 B.R. 98, 102 (Bankr.W.D.Mich.1988).

Elaborate statutory schemes for loan subsidy aid and bankruptcy, located respectively in the Act, 7 U.S.C. § 1981, 12 U.S.C. § 2201, *et seq.*, 7 C.F.R. § 1951, and 11 U.S.C. § 101, *et seq.*, strive to achieve Congress' spirit. Salient provisions warranting discussion include 11 U.S.C. §§ 362, 363, and 7 C.F.R. §§ 1951, 1981.

### II. The Automatic Stay and FmHA's Letter.

■■■ It is axiomatic that filing a bankruptcy petition operates as an automatic injunction halting judicial and nonjudicial proceedings against a debtor or his property. 11 U.S.C. § 362(a). Actions violating the automatic stay are void and of no effect. *Matter of Colonial Realty Co.*, 122 B.R. 1, 4 (Bankr.D.Conn.1990); *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 60 B.R. 920, 930 (D.P.R. 1986), *aff'd*, 805 F.2d 440 (1st Cir.1986). Without the automatic stay, creditors would dissipate the debtor's assets, causing piecemeal adjudication of a bankruptcy case, impairing a realistic opportunity to

reorganize, and damaging any orderly equitable distribution to creditors. *Midlantic Nat'l Bank v. N.J. Dep't of Environmental Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986); *In re Stringer*, 847 F.2d 549, 551 (9th Cir.1988). Both public and private creditors of the debtor are subject to the automatic stay. *U.S. v. McPeck*, 910 F.2d 509, 513 (8th Cir.1990); *Small Business Admin. v. Rinehart*, 887 F.2d 165, 168 (8th Cir.1989). FmHA is subject to the automatic stay.

■■■ A creditor employing self-help procedures, instead of seeking court authorization, does so at his own risk. *In re Miller*, 22 B.R. 479, 482 (D.Md.1982). Actions violating the stay may subject the creditor to punitive damages. 11 U.S.C. § 362(h); *McPeck*, 910 F.2d at 513. Attempting to collect a debt in a pending bankruptcy case without first being granted relief from the automatic stay violates 11 U.S.C. § 362(a).

County Supervisor Rydell's April 6, 1990, letter to Debtors' counsel, with copy to Debtors, informed of the availability of loan reservicing programs, promised full and fair consideration, and refused to negotiate with the Nelsons unless the automatic stay was modified or the case dismissed. FmHA's letter requested a response within 45 days and referenced debt reservicing regulations found at 7 C.F.R. § 1951, Subpart S. Forty-five days is the time to await a reply to the offering of FmHA's farmer programs debt servicing. 7 U.S.C. § 1981(e).

■■■ A letter apprising a debtor's attorney of the existence of legal rights does not violate the automatic stay. A letter demanding the debtor contact a creditor within a certain period of days or lose legal rights violates 11 U.S.C. § 362(a). The FmHA's April 6, 1990, letter's 45–day period inferentially purports to sever the Nelsons' rights. Borrowers must respond to the notice of loan availability programs within 45 days after receipt of said notice. *See* 7 U.S.C. § 1981(e); 7 C.F.R. § 1951.907(f), (h).

■■■ FmHA's letter insinuates losing rights unless contact is made within 45 days and the automatic stay is modified. The automatic stay grants debtors breathing room from their creditors. *Miller*, 22 B.R. at 481. FmHA's post-petition, 45–day demand letter invades the breathing room Congress provides. The demand letter, indicating a lack of contact will foreclose legal rights, can be construed to constitute either acceptance of no rights or a waiver if contact is not initiated timely. Generally, silence does not constitute acceptance. *In re Windsor Communications Group, Inc.*, 53 B.R. 297, 298 (Bankr.E.D.Pa.1985); E. Farnsworth, *Contracts* § 3.15, at 143 (1982). Also, a waiver must be an intentional and knowing choice. Farnsworth, *supra* § 8.6, at 565. FmHA's letter, demanding the automatic stay be lifted, cannot constitute an agreement or waiver to relinquish all rights under the Act by failing to respond within 45 days.

The Court concludes that a post-petition FmHA county supervisor letter, sent without modification of the automatic stay, which demands contact within 45 days, violates 11 U.S.C. § 362(a) to the extent such letter threatens a loss of rights if the demanded action does not occur. FmHA's letter violates the automatic stay because it attempts to collect on a debt by liquidating collateral.

■■■ 11 U.S.C. § 362(b)(4) provides a police or regulatory power exception to the automatic stay, protecting public health and safety, not a pecuniary interest. *U.S. v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988); *In re Advanced Professional Home Health Care, Inc.*, 82 B.R. 837, 840 (Bankr. E.D.Mich.1988); *In re IDH Realty, Inc.*, 16 B.R. 55, 57 (Bankr.E.D.N.Y.1981). Section 362(b)(4) is narrowly construed. *Id.* FmHA's letter fails to qualify within 11 U.S.C. § 362(b)(4) because FmHA's letter and sale stipulation protect only the government's pecuniary interest.

■■■ The county supervisor's letter appears unassisted by the Office of General Counsel (OGC), as required once bankruptcy is filed. 7 C.F.R. § 1955.15(d)(6)(ii). In light of Rydell's non-attorney status and

his complete candor in answering all questions sincerely, without hesitation, and his earnestness, evidenced by the numerous regulations he thought legal to operate under, sanctions under 11 U.S.C. § 362(h) are inappropriate. Early case assistance by OGC, or United States Attorneys such as Marsha Stacey who possess the sterling quality of being well-versed in bankruptcy's intricacies, would help prevent future blunderous automatic stay violations.

Department of Agriculture regulations cripple the FmHA's actions. 7 C.F.R. § 1951, Subpart S, incorporated into FmHA's April 6, 1990, letter, clarifies that the FmHA will not negotiate with the bankrupt unless the automatic stay is modified or the case is dismissed. The regulations place the entire burden on the debtor, which ignores the import of bankruptcy's intention of being rehabilitative, not cumbersome, to a debtor, and that creditors may seek modification of the automatic stay.

### III. Foreclosure Activity and the Act.

■■■■ A foreclosure involves a termination of all rights by which a mortgagor of real or personal property, or other property subject to a lien, is deprived of the interest. *Black's Law Dictionary* 581 (5th ed.1979). A foreclosure is a proceeding to enforce a lien on Act-subject property that secures a lien. 12 U.S.C. § 2202a(a)(4). Nonsanctioned foreclosure action violates the automatic stay because it attempts to recover a claim against a debtor by liquidating the debt's collateral.

■■■■ As a condition precedent to foreclosure actions on properties subject to the Act, the FmHA must give debtors their entitled Act protections. *Matter of Kramer*, 107 B.R. 668, 669 (Bankr.D.Neb.1989); *Matter of Dilsaver*, 86 B.R. 1010, 1015 (Bankr.D.Neb.1988), *aff'd*, 101 B.R. 604, 606 (D.Neb.1989). A motion for rent sequestration is a foreclosure attempt. *Id.* FmHA's agreement with the Trustee to sell the Debtors' farm free of encumbrances involves a termination of all of Debtors' rights to the land. A sale by the Trustee and foreclosure are similar given the forcible alienation of all rights the mortgagor had in the property. Conducting the sale of FmHA-encumbered realty through the Trustee does not eliminate protections under the Act.

■■■■ The Court concludes that Trustee's stipulation with the FmHA to sell the Nelsons' realty, encumbered by the FmHA, is a foreclosure-type action. Foreclosure action constitutes collection activity, permitted only if the automatic stay is not violated and the condition precedent of satisfaction of Act obligations occurred. FmHA's stipulation to let Trustee sell the Nelsons' farm shrewdly evades an automatic stay violation because the Court sanctions the action.

■■■■ The FmHA must cease foreclosure activities when a bankruptcy petition is filed unless certain conditions exist. The salient regulations provide:

(6) *Petition in bankruptcy filed by borrower after acceleration of account.*

(i) When bankruptcy is filed after an account has been accelerated, the foreclosure action must be suspended until:

(A) The bankruptcy case is *dismissed* or *closed* (a discharge of debtor does not close the case);

(B) An Order lifting the automatic stay is obtained from the Bankruptcy Court; or

(C) The property is no longer property of the bankruptcy estate *and* the borrower has received a discharge.

(ii) The State Director will request the assistance of OGC in obtaining the Order(s) described in paragraph (c)(6)(i)(B) of this section.

7 C.F.R. § 1955.15(d)(6) (emphasis in original). These provisions track 11 U.S.C. § 362(c)'s suspense of collection activities. No order modifying the automatic stay has been obtained, the Nelsons' farm remains estate property, and the case is still open. None of 7 C.F.R. § 1955.15(c)(6)'s conditions have occurred.

A government agency's violation of its own regulations is an affirmative defense. *In re Freese*, 119 B.R. 1019, 1022 (Bankr.N.D.Iowa 1990) (foreclosure action); *In re Four Winds Enters., Inc.*, 87 B.R. 624, 629

(Bankr.S.D.Cal.1988) (contract termination). Debtors and their counsel could and apparently did rely on the letter and proposed sale as violations by FmHA of their own regulations, which would prevent the foreclosure sale via the Trustee. The FmHA is bound to properly discern and comply with applicable Code, U.S.C., and C.F.R. provisions. The Court will not entertain a motion to sell FmHA-encumbered property until Act obligations are satisfied.

### IV. Rights Under the Act.

The Act creates valuable rights intended to rescue farmers from dire financial straits. *Shannon,* 100 B.R. at 913. The borrowers' rights provisions of the Act create no implied private right of action. *Zajac v. Federal Land Bank of St. Paul,* 909 F.2d 1181, 1183 (8th Cir.1990). Nonetheless, entities subject to the Act are not free to ignore it in bankruptcy. *See In re Jarrett Ranches, Inc.,* 107 B.R. 969 (Bankr. D.S.D.1989). FmHA's letters of debt reorganization are admissions that the Nelsons' loan qualifies for Act protections. Fed.R. Evid. 801(d)(2).

The Act's two program types are "primary loan servicing programs," which permit consolidation, deferments, and debt writedown, and "preservation loan servicing programs," which allow farmers to buy back or lease back their farms or simply retain their homesteads. 7 C.F.R. §§ 1991(b)(3)–(4), 2001(b)–(c). The Act imposes restructuring duties only upon institutions chartered by the Farm Credit Association. 12 U.S.C. §§ 2202a(a)(6), (b)(1)–(3); *U.S. v. Jones,* 811 F.2d 444, 447 (8th Cir. 1987). The FmHA is so chartered.

Primary loan servicing programs are not available to farmers granted a discharge in bankruptcy of debt owed the FmHA because no personal obligation is owed after discharge. *Lee v. Yeutter,* 917 F.2d 1104 (8th Cir.1990). In contrast, the lease back and buy back preservation programs are available to the immediate previous borrower-owner of realty taken into inventory. *Id.* at 1106. The Nelsons are no longer borrowers, since they received a debt discharge, but are the immediate owners.

The Nelsons' property is not presently acquired in FmHA's inventory, a prerequisite for preservation program eligibility. 7 U.S.C. § 1985(e)(1)(A)(i). FmHA's stipulation with the Trustee to sell the FmHA-encumbered farm eliminates normal foreclosure procedures. FmHA's brief admits it could end up with the Nelsons' farm as FmHA inventory in a normal foreclosure action. A successful relief from stay and reclamation motion would unquestionably place the real estate in the FmHA's inventory.

A stipulation permitting the Trustee to conduct the sale kills the possibility of the creation of preservation program rights in the Debtors because the realty could never technically become FmHA inventory. Trustee found a willing buyer for the farm. It would be unconscionable to permit a standing Chapter 7 trustee, a vassal of the equitable bankruptcy court system, to gouge substantive congressional-given rights from the eyes of debtors by avoiding inventory on a technicality. The stipulation to sell property is a complex scheme designed to deprive Act rights to those deserving of them.

The Court concludes that property a trustee proposes to sell, which otherwise might reasonably become FmHA inventory entitled to preservation programs under the Act, shall be considered inventory for Act purposes provided the Act beneficiaries assert inventory-accruing rights prior to the sale of the property. The borrower or lessee must actively raise the preservation program right prior to the Trustee's sale. The FmHA cannot indirectly avoid inventory-accruing obligations which it could not prevent directly. Preservation program rights are granted to the immediate owner and prior lessee. 7 U.S.C. § 1985(e)(1)(C). The Nelsons own the real estate and assert rights under the Act. Debtors enjoy preservation loan servicing program rights which encumber the realty.

A debtor's homestead property, as exempt property, does not constitute property of the estate subject to sale by a

trustee. *In re Duncan,* 107 B.R. 754, 757 (Bankr.W.D.Okla.1988). South Dakota's homestead exemption permits equity of $30,000 as exempt property. S.D.C.L. § 43–45–3. Homestead laws are liberally construed for the protection of the family home. *In re Johnson,* 61 B.R. 858, 865 (Bankr.D.S.D.1986); *In re Corbly,* 61 B.R. 843, 850 (Bankr.D.S.D.1986). South Dakota's homestead exemption may be waived. The Nelsons never voluntarily relinquished any known preservation program rights which accrued by virtue of the proposed alienation-by-Trustee sale. The Court concludes that a debtor may claim, as exempt, homestead rights to the extent of $30,000 in value of preservation loan servicing program rights, subject to any lawful waiver of those rights.

The Debtors can waive Act benefits or release them for consideration. FmHA has yet to offer lease back and buy back preservation program options to the Nelsons. The proposed sale cannot occur free of all interests as the Nelsons have property rights which must be administratively handled by the FmHA.

Fitzgerald claims rights as a tenant of the property in 1990. A real estate lease is a contract by which the lessor gives the lessee temporary possession and use of the property for value. S.D.C.L. § 43–32–1. To constitute a valid land lease, there must be a meeting of the minds or mutual assent on all essential terms. *Knutson v. Knutson,* 76 S.D. 473, 474, 80 N.W.2d 871, 872–73 (1957); *Palen v. Pierce,* 44 S.D. 316, 317, 183 N.W. 973, 974 (1921). David Nelson and Fitzgerald testified to different, vague lease-term versions. Fitzgerald intended a five-year lease, yet Nelson intended a lesser period, rent prices varied at least $3,300, and different acreages were involved. The failure of David Nelson and Fitzgerald to achieve a meeting of the minds prevents a leasehold relationship. The Trustee's records illuminate a situation where a lease was contemplated for $4,000 but not consummated. Furthermore, Fitzgerald testified he intended a five-year contract, and such a contract is subject to the statute of frauds and must be in writing to be valid. S.D. C.L. § 43–32–5.

The Nelsons never petitioned for approval of any lease between the Debtors and Fitzgerald as required under 11 U.S.C. § 363. The FmHA is entitled to notice where an owner-borrower-debtor intends to create rights in a tenant. The Court concludes that Fitzgerald did not have a binding oral lease with the Debtors. Fitzgerald fails to qualify as a previous operator pursuant to 7 C.F.R. § 1951.906. Fitzgerald has no legal rights to any Act servicing agreements the FmHA is obligated to provide to the Nelsons.

## V. Sale by Trustee.

A trustee has discretion in deciding whether to abandon or sell property. *In re K.C. Mach. & Tool Co.,* 816 F.2d 238, 246 (6th Cir.1987); *In re Terrace Gardens Park Partnership,* 96 B.R. 707, 713 (Bankr.W.D.Tex.1989). A bankruptcy court must find either that the property is burdensome to the estate or that the property is of inconsequential value and incidental benefit to the estate. 11 U.S.C. § 554; *K.C. Mach.,* 816 F.2d at 245. Debtors have no equity in the farm.

The Chapter 7 trustee's purpose is to liquidate the estate for the benefit of unsecured creditors. *Id.* The FmHA, a largely unsecured creditor, benefits from the sale in saved foreclosure costs and, until now, quickly disposed of the realty because preservation program rights were eliminated by keeping the property out of FmHA's inventory. Authority exists which permits a trustee to sell FmHA-encumbered property once Act protections have been fulfilled. *Duncan,* 107 B.R. at 758. The Court concludes that the Trustee may sell FmHA-mortgaged property provided Act obligations are adequately satisfied. Because the Nelsons have not yet been offered preservation program rights, the land cannot be sold free and clear of liens.

## CONCLUSION

The Bankruptcy Code and the 1987 Agricultural Credit Act coexist to rehabilitate distraught debtors. The FmHA's post-petition letter, alluding to a loss of rights if no

response occurs within 45 days, violates the automatic stay. Foreclosure activities, including the sale of land by the trustee, will not be heard by a bankruptcy court until Act obligations have been fulfilled. Act benefits may be claimed as exempt property to the maximum homestead exemption ceiling allowed by law. Property in FmHA's inventory gives rise to preservation program rights in the immediate owner or operator. The Trustee's sale eliminates the possibility that the realty may become part of the FmHA's inventory. The sale scheme justifies according such property preservation program rights provided the Act beneficiaries assert inventory-accruing rights prior to the sale of the property. The Nelsons are entitled to preservation program benefits as the immediate property owners, but not Fitzgerald, because he is not a previous owner or tenant. Trustee does have authority under 11 U.S.C. § 363 to conduct the sale of Debtors' farm, encumbered by FmHA's mortgage, provided Debtors' interests under the Act have been satisfied. The Court shall enter an appropriate order sustaining the Nelsons' objections, overruling Fitzgerald's objections, and denying the proposed sale.