In re David E. and Marsha
R. NELSON, Debtors.

UNITED STATES of America, through
the FARMERS HOME ADMINIS-
TRATION, Appellant,

v.

David E. and Marsha R.
NELSON, Appellees.

No. Civ. 91–4039.

United States District Court,
D. South Dakota, S.D.

July 26, 1991.

Ted L. McBride, First Asst. U.S. Atty., Sioux Falls, S.D., for appellant.

Michael J. McGill, Beresford, S.D., for appellees.

## MEMORANDUM OPINION AND ORDER

JOHN B. JONES, Chief Judge.

### Introduction

FmHA appeals from a ruling of the bankruptcy court prohibiting the trustee's sale of the debtors' property.

### Jurisdiction

This Court takes jurisdiction over this matter pursuant to 28 U.S.C. § 158(a).

### Standard of Review

This Court shall review the decisions of law of the bankruptcy court de novo (In re Newcomb, 744 F.2d 621, 625 (8th Cir. 1984).), and findings of fact shall be upheld unless clearly erroneous (Bankruptcy Rule 8013.).

### BACKGROUND

Debtors own a farm encumbered by a first mortgage securing a loan from FmHA. The debtors have been delinquent on their loan since sometime in 1986. Debtors have not lived on the land since 1985, but rented the land to a neighbor. Debtors live and work in Beresford.

In 1987, FmHA sent the debtors an "Intent to Take Adverse Action" letter, but foreclosure proceedings were stayed by a nation-wide moratorium on FmHA foreclosures. In 1988, after the lifting of the moratorium and the passage of the 1987 Agricultural Credit Act, FmHA sent debtors a "Notice of Availability of Loan Servicing Programs." The debtors did not respond. Another notice of servicing options was sent to the debtors in April 1989, but again the debtors did not respond. FmHA requested mediation from the South Dakota Mediation Board, however the debtors did not respond and no hearing was held. Thereupon, FmHA accelerated debtors' loan.

In March of 1990, debtors filed a Chapter 12 bankruptcy. Pursuant to its regulations, FmHA sent the debtors' attorney a 1951–S Servicing Letter. That letter stated as follows:

> We were recently notified that your borrower, David E. Nelson, has filed bankruptcy. The enclosed forms explain some of the loan servicing options that FmHA has available. We would appreciate your informing your client of these options. In order to ascertain whether your client is eligible for these options, it is necessary for FmHA's employees to work closely with your client. We are concerned about whether such contact will be in violation of the automatic stay.
>
> If your client has filed under Chapter 11, 12, or 13 and wants to apply for servicing relief from FmHA, the case must be dismissed or the automatic stay must be modified for the limited purpose of permitting your client to apply for servicing relief.... Unless the automatic stay is modified for this purpose ... or the case is dismissed, FmHA will not discuss any of the servicing options with you or your client. You may, of course, choose to file a proposed plan which may or may not contain debt restructuring features similar to those available from FmHA.
>
> If you intend to file a motion to allow your client to request and be granted servicing relief, we ask that you do so within 45 days. If no motion is filed within that time, we will assume that your client does not intend to make a request for servicing, and we will proceed to protect our interest, as allowed by the Bankruptcy Code.

The rights referred to in FmHA's letter are 1) primary loan servicing, and 2) preservation loan servicing. Primary loan servicing is an effort to rewrite the borrower's loan in such a way as to enable the borrower to repay it. Preservation loan servicing covers land to which FmHA has already received title—land "acquired" or held in

"inventory" by FmHA. 7 U.S.C. § 1991(b)(3) & (4).

The debtors did not respond to FmHA's letter, but continued in the bankruptcy. The debtors received a discharge, but the case has not been closed. On 28 December 1990, pursuant to 11 U.S.C. § 363(f), and with FmHA's consent, the trustee undertook to sell the farm free of all liens and encumbrances.

The debtors filed objections to the Trustee's Notice of Proposed Action to Sell Real Property Free and Clear of Liens and Encumbrances. The bankruptcy court held a hearing on the objections and subsequently issued a memorandum opinion and Order Denying Sale of Real Estate.

The bankruptcy court held that

1) The letter from FmHA was an attempt to collect a prepetition debt, and therefore violated the automatic stay;

2) FmHA's consent to the trustee's sale violated the federal regulations which require FmHA to cease all foreclosure action upon the filing of the bankruptcy; and

3) The debtors have a Homestead interest in the farm, and the Homestead right includes the preservation loan servicing rights; therefore the land is encumbered by the debtors Homestead interest and cannot be sold free and clear.

FmHA appeals from these rulings.

I. *Whether FmHA's letter to the debtors' counsel constituted a violation of the automatic stay.*

■ The· bankruptcy court determined that the letter sent to the debtors' attorney by FmHA on 6 April 1990 violated the automatic stay provided under 11 U.S.C. § 362. The letter notified the debtors that they may be entitled to primary or preservation loan servicing. The letter also informed the debtors that to be eligible for primary loan servicing they must respond within 45 days. The bankruptcy court determined that, because the letter forces the debtors to choose between dismissing their bankruptcy or modifying the stay and losing FmHA primary loan servicing rights,

FmHA's letter of 6 April 1990 violated the automatic stay.

The only rights which the debtors lost by not responding to FmHA's letter were the primary loan servicing rights. The bankruptcy court correctly noted that primary loan servicing rights are not available to a debtor who has been granted a discharge in bankruptcy. *Lee v. Yeutter,* 917 F.2d 1104, 1108 (8th Cir.1990). The debtors have been granted a discharge of their FmHA obligation. Therefore, the debtors are not entitled to primary loan servicing rights. Further, the bankruptcy court did not sanction the FmHA official who sent the letter. Thus, the determination of whether the letter violated the automatic stay will have no real effect and the question is moot. *See In re Smith,* 921 F.2d 136, 138 (8th Cir.1990) (This Court may decide "only live controversies, cases that will have a real, practical effect."). This Court is, therefore, without jurisdiction to consider whether the letter violated the automatic stay. *See Id.* ("[M]ootness, if it exists, would destroy ... jurisdiction[.]").

II. *Whether FmHA's consent to the trustee's sale of the property violates 7 C.F.R. § 1955.15(d)(6).*

■ The bankruptcy court held that FmHA's consent to the trustee's sale pursuant to 11 U.S.C. § 363 constituted "a foreclosure-type action." 123 B.R. 993, 1001. The bankruptcy court held that 7 C.F.R. § 1955.15(d)(6) prevents FmHA from conducting foreclosure activities. Thus, the bankruptcy court concluded that FmHA's consent to the trustee's sale violated 7 C.F.R. § 1955.15.

As the bankruptcy court found, "These provisions [of 7 C.F.R. § 1955.15(d)(6)] track 11 U.S.C. § 362(c)'s suspense of collection activities." 123 B.R. at 1001. The scope of § 1955.15(d)(6)'s prohibition is the same as the scope of the automatic stay for any creditor. Therefore, to the extent that an FmHA action does not violate the automatic stay, that action does not violate § 1955.15(d)(6). Equally, to the extent that the bankruptcy court has held that consenting to the trustee's sale under 11 U.S.C.

§ 363 constitutes a foreclosure action by the consenting creditor, that logic would preclude any creditor from ever consenting to a trustee sale.

Consenting to a trustee sale under 11 U.S.C. § 363 does not violate the automatic stay.

[A]n action taken in the bankruptcy court can only be found to be a violation of the automatic stay when there is no basis under the Code for the action.

*In re Hodges*, 83 B.R. 25, 26 (Bankr. N.D.Cal.1988) (citing 2 Collier on Bankruptcy (15th ed.) § 362.02, p. 326–27). The Bankruptcy Code provides that

The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(1).

The Code further provides that

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

\*     \*     \*     \*     \*     \*

(2) such entity consents;

11 U.S.C. § 363(f).

There is clearly a basis in the Code for the trustee to sell the debtors' farm, and there is clearly a basis in the Code for FmHA to consent to the trustee's sale.

The bankruptcy court held that FmHA could not consent to the trustee's sale "until act obligations are satisfied." 123 B.R. at 1002. The regulations promulgated pursuant to the Act impose two obligations on FmHA when a borrower files bankruptcy— send the borrower notice of loan servicing options and do not violate the automatic stay. All act obligations have been satisfied.

When the debtors filed for bankruptcy, FmHA was required to send them notice of their rights under Department of Agriculture regulations. 7 C.F.R. § 1962.47(a)(3) (1990). FmHA sent the debtors the required notice. That notice informed the debtors that, if they decided to pursue bankruptcy instead of primary loan servicing, "[FmHA] will proceed to protect [its] interest, as allowed by the Bankruptcy Code." The Bankruptcy Code allows the trustee to sell property of the bankruptcy estate. 11 U.S.C. § 363(b)(1). The bankruptcy court stated that "FmHA's stipulation with the trustee to sell the FmHA-encumbered farm eliminates normal foreclosure procedures." Memorandum Op. at 13. That is not the case. It is the Bankruptcy Code which eliminates normal foreclosure procedures, and it is the Bankruptcy Code which authorizes the trustee to sell the encumbered property with FmHA's consent. 11 U.S.C. §§ 362(a) & 363(f). Nothing in the Department of Agriculture regulations affects the relevant provisions of the Bankruptcy Code. FmHA may protect its interest as provided by the Code.

Once an FmHA borrower declares bankruptcy, and does not reaffirm the FmHA debt, FmHA takes the same position as any other creditor in the bankruptcy. Federal regulations do not require FmHA to sit on its rights in bankruptcy court. Indeed, FmHA regulations provide that FmHA will not work with any debtor in bankruptcy that does not reaffirm an FmHA debt.

FmHA will not continue with a debtor who does not reaffirm the FmHA debt.

7 C.F.R. § 1962.47(a)(3)(ii) (1990).

Further, the reaffirmation must remain in effect.

If the borrower revokes the reaffirmation, the account will be accelerated and liquidated as set out in paragraph (c)(4)(i) of this section.

7 C.F.R. § 1962.47(c)(4)(iii) (1990).

It is clear that the Department of Agriculture regulations do not create special rights for a debtor who seeks to deal with FmHA in bankruptcy court.

Rather than filing the bankruptcy, the debtors could have applied for primary loan servicing or voluntarily turned the farm over to FmHA, providing the debtors the opportunity to lease or buy the farm back.[1]

---

1. Of course, the FmHA is not required to accept the Debtors' farm.

[A] voluntary conveyance should be accepted only after the borrower has been sent

Having filed bankruptcy, the debtors could have moved to modify the stay and afforded themselves an opportunity either to rewrite their obligation to FmHA under primary loan servicing or to voluntarily turn the farm over to FmHA. Again, this would have given the debtors the benefit of the loan servicing programs. However, the debtors did neither of these, rather, the debtors decided that they would deal with FmHA in the bankruptcy court. That is their prerogative; however, having made that decision, the debtors must deal with FmHA as any other creditor in bankruptcy.

FmHA has complied with all provisions of the Department of Agriculture regulations and all provisions of the Bankruptcy Code.

■ The bankruptcy court also determined that the trustee's sale circumvented the debtors' rights to preservation loan servicing. The debtors have, at this time, no right to preservation loan servicing. Initially, it is important to define the preservation loan servicing rights.

■ The rights which are pertinent to the present appeal are the rights under the Leaseback/Buyback Program. "The Farmer Programs Leaseback/Buyback Program will permit the previous owner of real property that was security for a Farmer Programs loan(s) to have the first opportunity to lease or purchase that property from FmHA." 7 C.F.R. § 1951.911(a) (1990). Of particular significance to the instant issue is when the borrower becomes eligible to take advantage of the Leaseback/Buyback Program. A debtor does not become eligible for preservation loan

servicing until FmHA acquires the debtor's property.

When FmHA *acquires* a farm property, the former owner will be sent exhibit O of this subpart within 30 days. The former owner has 180 days *from the date FmHA acquires the farm*, to apply for leaseback/buyback, unless State law provides for a longer period.

7 C.F.R. § 1951.911(a)(1)(ii) (1990) (emphasis added).

The rights afforded individuals under the leaseback/buyback program will only be offered once *after the property comes into FmHA inventory.*

7 C.F.R. § 1951.911(a)(2)(v) (1990) (emphasis added).

The bankruptcy court acknowledges that the debtors are not yet entitled to preservation rights. "The Nelsons' property is not presently acquired in FmHA's inventory, a prerequisite for preservation program eligibility." 123 B.R. at 1002. The bankruptcy court is correct, the debtors are not eligible for preservation rights.[2]

■ The bankruptcy court seems to presume that, but for the trustee's sale, FmHA would acquire the debtors' farm into inventory. However, that is not necessarily so. FmHA may never acquire the debtors' land. Nothing in the Department of Agriculture regulations requires FmHA to acquire a borrower's property. Indeed, FmHA has a great deal of discretion in determining whether to accept voluntary relinquishment,[3] and, under a foreclosure sale, FmHA will only acquire the property

Exhibit A with Attachments 1 and 2 of Subpart S of Part 1951 of this chapter; all available servicing actions outlined in the respective program servicing regulations have been used or considered; *and it will be in the Government's best financial interest to accept the [farm program] voluntary conveyance....* In determining if the acceptance of the [farm program] voluntary conveyance is in the best financial interest of the Government, the County Supervisor will determine if the borrower has exhausted all possibilities of restructuring the loan to where a feasible plan of operation may be developed, the borrower

has acted in good faith in trying to service the debt and FmHA may recover its cost in return for the acceptance of the voluntary conveyance.

7 C.F.R. § 1955.10 (1990) (emphasis added).

2. The Debtors may, nonetheless, apply for preservation rights before FmHA takes title to the property. 7 C.F.R. Pt. 1951, Subpt. S, Exh. A (1990). However, that application does not change the fact that those preservation loan servicing options will only exist if FmHA acquires the property.

3. *See* footnote 1.

if it is the highest bidder.[4]

■ The purpose of the preservation rights is to minimize the impact to the local economy of selling land that is in FmHA inventory, not to place a duty on FmHA to acquire the land. H.R.Rep. No. 271(I), 99th Cong., *reprinted in* 1985 U.S.Code Cong. & Admin.News 1103, 1206.

If FmHA acquires the debtors' farm, debtors will be entitled to preservation loan servicing. If FmHA does not acquire the debtors' farm, debtors will not be entitled to preservation loan servicing. FmHA complied with the relevant regulations and the relevant bankruptcy law. The bankruptcy court erred in holding that there was any legal impediment to the trustee's sale.

III. *Whether the South Dakota homestead exemption includes preservation loan servicing rights.*

■ The bankruptcy court held that the preservation rights, to the extent that they are asserted before the trustee's sale, are protected under South Dakota's homestead exemption. As earlier noted, a debtor only becomes eligible for preservation loan servicing *after* FmHA acquires the debtor's farm—it is only available to "former owners." South Dakota Homestead rights, on the other hand, are only available to *owners*.

The homestead must embrace the house used as a home by the *owner* thereof[.]

SDCL 43–31–2 (1983) (emphasis added).

The debtors presently have no right to preservation loan servicing. The debtors will obtain preservation loan servicing rights only if, and when, the farm is acquired by FmHA. Because only a former owner can be eligible for preservation rights, and only a present owner can have homestead rights, the two types of rights are mutually exclusive.

**CONCLUSION**

It is clear that the regulations pertaining to FmHA loans, and the collateral that secures them, are written to provide debtors with an opportunity to hold onto their farm during troubled economic times. However, the rights that the Act provides must be accepted under the terms provided in the regulations. The debtors could choose between dealing with FmHA through the programs provided by FmHA to serve troubled farm debtors, or dealing with FmHA in bankruptcy court. Once the debtors decided to deal with FmHA in bankruptcy court, FmHA secured the same rights as any other creditor. If FmHA should acquire title to the debtors' farm, debtors will be entitled to preservation loan servicing. However, at this time, debtors are a debtor in bankruptcy and FmHA is one of their creditors. The Bankruptcy Code establishes the rights and responsibilities of the parties.

Therefore,

Upon the record the record herein,

IT IS ORDERED:

1) The bankruptcy court's Order Denying Sale of Real Estate is hereby vacated; and,

2) The trustee is hereby authorized to sell the debtors' real estate free and clear of all liens and encumbrances.

---

**4.** In fact, FmHA is not even required to bid. 7 C.F.R. § 1955.15(f)(6) provides

The Government's bid will be entered when no other party makes a bid or when the last bid made will result in the property being sold for less than the bid authorized in paragraph (f)(5) of this section.

FmHA's bid will be

the amount of FmHA's gross investment or the market value of the security, whichever is less.

7 C.F.R. § 1955.15(f)(5) (1990).

Given that a third party has already bid the market value of the security, FmHA would not acquire the Debtors' farm were it to foreclose.