**In re James Randall SMITH and Bonnie Jo Smith, Debtors.**

**James Randall SMITH and Bonnie Jo Smith, Appellees,**

**v.**

**UNITED STATES of America, Appellant.**

**No. 89–2936WM.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1990.

Decided Oct. 19, 1990.

Stephen B. Strayer, Liberty, Mo., for appellees.

Gary R. Allan, Murray S. Horwitz, Tax. Div., Dept. of Justice, ·Washington, D.C., for appellant.

Before ARNOLD and FAGG, Circuit Judges, and WATERS,* District Judge.

ARNOLD, Circuit Judge.

This case arises under § 505(a) of the Bankruptcy Code of 1978, 11 U.S.C. § 505(a). Purporting to exercise jurisdiction under that section, the Bankruptcy Court decided that the debtors, James Randall Smith and Bonnie Jo Smith, did not owe a certain tax penalty. The Bankruptcy Court further held that the government was in possession of some $16,400.00 that rightfully belonged to the debtors. The District Court affirmed, and the government filed this appeal. The government now argues that the case is moot, and that the appeal should therefore be dismissed. For reasons explained in this opinion, we agree.

The debtors, James Randall Smith and Bonnie Jo Smith, appellees in this Court, filed joint federal income tax returns for the tax years relevant to this case. James operated two businesses, Overland Park Imports, Inc., and Crews Chrysler–Plymouth, Inc., both automobile dealerships. In 1979, these businesses failed properly to pay over to the Internal Revenue Service some $34,800.00 in withheld taxes. Accordingly, the IRS assessed this amount against James (and, consequently, also against his wife, by reason of the filing of the joint tax return) under 26 U.S.C. § 6672.[1]

James, who by that time had filed a Chapter 7 proceeding in the United States Bankruptcy Court for the Western District of Missouri, claimed that he owed the government nothing because he had not been a "responsible person" in the operation of the two automobile dealerships at the times in question. Banks which had lent the dealership money, James argued, had effectively taken control of both businesses and had ordered him not to pay the taxes, preferring that payments be made to themselves instead. In order to assert this theory that he should be free from the penalty assessment made by the government under § 6672, James filed a complaint in the Bankruptcy Court, seeking to have that Court determine that he was not a responsible person who had willfully failed to pay over the withheld taxes of either Overland or Crews for the periods in question. In the meantime, James and Bonnie Jo had filed their 1978 personal federal income tax return. This return showed an overpayment in 1978 taxes of approximately $15,000.00. As a result of this overpayment, the IRS allowed taxpayers an overpayment credit of approximately $16,400.00,[2] and offset this amount against the § 6672 assessment that had been made against James. In his Bankruptcy Court complaint, James originally asked that this overpayment be refunded, but in their amended complaint debtors asked simply that the Bankruptcy Court determine that James was not liable for any § 6672 penalty, and that it "issue such orders and judgments as will afford plaintiffs and the [bankrupt] estate complete relief concerning said penalties...." A. 11, 19.

---

* The Hon. H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

1. Section 6672 of the Internal Revenue Code of 1954, in effect at the times relevant to this case, provided in pertinent part as follows:

    (a) *General Rule.*—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

2. This amount appears to be made up of the $15,000.00 overpayment plus interest.

The United States, which was named as defendant in the debtors' complaint, contended that the Bankruptcy Court had no jurisdiction. The governing statute is 11 U.S.C. § 505(a), which provides as follows:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

The government also claimed that it should win on the merits—that James in fact had been a responsible person, and that whatever influence the banks had had over the operation of his businesses was not legally sufficient to excuse him.

The Bankruptcy Court held for James. It first decided that it did have jurisdiction, and it then found as a fact that officials of the banks had specifically ordered James not to pay taxes to the Internal Revenue Service. This situation, the Bankruptcy Court felt, prevented James from being a responsible person liable for § 6672 penalties. *In re James Randall Smith*, 68 B.R. 105 (Bankr.W.D.Mo.1986). On the government's appeal, the District Court affirmed. No. 87–0408–CV–W–8, slip op. (W.D.Mo. Sept. 29, 1989). The United States then appealed to this Court.

■ The government argues that the case is moot. The debtors say the mootness claim was not raised in either of the courts below, but we are still obliged to consider and determine it. Under Article III of the Constitution, we sit to decide only live controversies, cases that will have a real, practical effect. Mootness goes to the very heart of Article III jurisdiction, and any party can raise it at any time. Indeed, it would be the Court's duty to raise and decide the issue on its own motion, if facts suggesting mootness should come to its attention, even if both parties were silent on the subject. See *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). And, since mootness, if it exists, would destroy our jurisdiction, we should address this issue first.

■ The government is not claiming any additional payments from James on account of the § 6672 assessment. It is not seeking to recover the difference between the $34,800.00 assessed and the $16,400.00 which it has credited by reason of the 1978 overpayment. Moreover, neither James nor the bankruptcy trustee has ever filed a claim for refund. The time within which such a claim might be filed has long since passed. Neither the Bankruptcy Court nor the District Court purported to order a refund. They simply declared the rights of the parties. No coercive relief against the government was entered, nor do the debtors now claim that the judgments below, in and of themselves, entitle them to any such relief. Accordingly, the government contends, there is no longer any real controversy (if indeed there ever was one). Nothing of practical consequence turns on the outcome of this appeal. Whoever wins the case, the government will keep the 1978 overpayment (no claim for refund ever having been filed), and James will be otherwise left undisturbed (the government having now abandoned any claim that he should pay the remainder of the § 6672 assessment).

■ In his brief on this appeal, James replies that an affirmance of the judgment of the District Court would establish that he has a legal right to the 1978 overpayment, now in the possession of the

government. The trustee in bankruptcy could then file a turnover proceeding against the United States, which proceeding would necessarily result in the government's having to pay the money back to James, or, rather, we suppose, to the bankruptcy estate. On this view, our decision on this appeal would have a practical consequence: a decision in James's favor would give his trustee in bankruptcy a legal basis for a turnover proceeding against the government.

We believe a complete answer to this contention is found in 26 U.S.C. § 7422(a). This statute reads as follows:

> (a) No suit prior to filing claim for refund.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Under § 7422(d), the credit of an overpayment of any tax in satisfaction of any tax liability is treated, for purposes of any refund suit, as a payment in respect of that liability. Clearly, if the trustee were to file a turnover action, it would be a species of "suit or proceeding ... for the recovery of ... any penalty claimed to have been collected without authority...." In the absence of a timely claim for refund, such a suit or proceeding could not be maintained. So the possibility that the trustee in bankruptcy, in the event of the affirmance of the judgment of the District Court, could file a turnover proceeding turns out to be without legal significance. Such a proceeding would be, on its face, barred by the provisions of the Internal Revenue Code just referred to.

Accordingly, we conclude that the government is correct in urging that the outcome of this appeal could have no prac-

tical significance. Under the statutory scheme carefully constructed by Congress to safeguard the collection of the revenue, there is no way for the debtors to get their overpayment back. If the government were still claiming the remainder of the § 6672 penalty, the determination of the courts below that the penalty is not owed would of course have practical significance, but the government is not making any such claim, and it is bound by its representation that no such claim will be made in the future. In terms of money, therefore, which, after all, is what this case is about, a decision one way or the other will have no practical consequence.

Accordingly, the appeal will be dismissed as moot. This cause is remanded to the District Court with directions to vacate its judgment as moot, and then to remand to the Bankruptcy Court with directions to vacate its judgment and dismiss the complaint as moot. See *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

It is so ordered.