# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3490

_____

In re: Gretter Autoland, Inc.

*Debtor*

------------------------------

James M. Gretter

*Appellant*

v.

Gretter Autoland, Inc.; General Motors Company; Ford Motor Company; Edwards Auto Plaza, Inc.

*Appellee*s

Robert Schlegel

*Trustee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: June 5, 2017
Filed: July 25, 2017

_____

Before WOLLMAN, ARNOLD, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

James Gretter (whom we refer to as "James" to avoid confusion with the debtors here) appeals the order of the district court[1] dismissing his appeal from a bankruptcy court decision denying the debtors' motions to assume and assign certain car-dealership agreements. We dismiss the appeal as moot.

This case has a complex factual history. Debtors Gretter Autoland, Inc., Gretter Ford Mercury, Inc., and Gretter Chevrolet Company filed for Chapter 11 bankruptcy protection because their car dealerships were experiencing financial woes. The debtors (who remained in possession) later sought the bankruptcy court's approval of a sale of the dealerships as going concerns to Edwards Auto Plaza, Inc. The debtors and Edwards then entered into a purchase agreement governing the sale of the dealerships and other assets, including the Ford and GM dealership agreements. Edwards's performance was conditioned on Ford's and GM's consent to the assignment of the dealership agreements and the bankruptcy court's approval of the sale. Edwards paid a $75,000 deposit, which was returnable if closing did not occur by a certain date. The agreement also required Edwards to enter into separate contracts to purchase two pieces of real property where the dealerships operated.

GM and Ford objected to the sale on the grounds that they had a contractual right to approve the assignment of the dealership agreements, which neither would do under the circumstances. The bankruptcy court sustained the objections, ruling that the dealership agreements could not be assigned without the manufacturers' consent. The bankruptcy court also reminded the debtors that they could transfer the dealerships only if they satisfied the requirements of 11 U.S.C. § 365, which governs

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

the assumption and assignment of executory contracts. Section 365 requires, as relevant, that debtors in possession cure defaults of an agreement they want to assume and assign and give "adequate assurance of future performance under" it. *See* 11 U.S.C. § 365(b)(1)(A), (C). (We note that, by its terms, § 365 mentions trustees and not debtors in possession, but 11 U.S.C. § 1107(a) bestows on debtors in possession much of the same powers as the trustee, including the powers specified in § 365. *See In re Wireless Data, Inc.*, 547 F.3d 484, 488 (2d Cir. 2008) (per curiam)).

The debtors and Edwards responded by amending the purchase agreement to eliminate the condition governing Ford's and GM's approval of the assignments. They also added a condition that the bankruptcy court strike language in its previous order recognizing the manufacturers' rights to approve assignments on the ground that Ford and GM had no right to object to the assignment under Iowa law. Edwards also advised the court that it wished to complete the sale as soon as possible because the debtors could not continue operating much longer, and the deal would likely collapse if they ceased doing business.

Meanwhile, the debtors took the court's cue and filed motions to assume and assign the dealership agreements under § 365. The bankruptcy court, however, denied the motions, finding that the debtors had not satisfied § 365: They were in default of the dealership agreements because they had co-mingled the dealerships into a dual facility, which neither manufacturer allowed; and Edwards had not given adequate assurance of future performance because it intended to continue operating the dual facility. The court also declined to strike language from its previous order governing Ford's and GM's rights to approve assignments. On the same day that it denied the motions, the bankruptcy court granted permission for one of the debtors' secured creditors to begin foreclosing on inventory. After hearing that Edwards intended to revoke its purchase offer, the U.S. trustee moved to convert the case to Chapter 7. The bankruptcy court then authorized the foreclosure of the real property where the

dealerships operated, at which point the owners of both parcels of real estate, one of whom was James, conveyed the properties to the mortgagees in lieu of foreclosure.

Almost two weeks after the bankruptcy court denied the motions to assume and assign, James entered an appearance in the case, moved for reconsideration of the denial of the motions, and objected to Chapter 7 conversion. He had just recently bought some notes that the debtors had executed on which he stood as surety, thus becoming a creditor to the debtors, which he asserts gave him standing to participate in the bankruptcy proceeding. The debtors joined James's motion to reconsider, but everyone else opposed it, including Edwards, which had withdrawn support for the motions because it was no longer interested in purchasing the defunct dealerships. The bankruptcy court denied James's motion to reconsider and converted the case to Chapter 7 after James withdrew his objection.

James appealed the denial of the debtors' motions to assume and assign and the denial of his motion to reconsider that decision to the district court, arguing that the bankruptcy court had erroneously concluded that the debtors were in default of the dealership agreements and that Edwards did not provide adequate assurance of future performance. Edwards, later joined by GM, responded by filing a motion to dismiss the appeal as equitably moot, which the district court granted. James appeals from that order.

We need not address the parties' dispute about the nature and shape of the so-called equitable mootness doctrine because we conclude that the case is moot in the ordinary sense. A case becomes moot when the court can no longer grant any effectual relief to a prevailing party due to a change in circumstances. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). If nothing of practical consequence turns on the outcome of an appeal, then the appeal is moot. *In re Smith*, 921 F.2d 136, 138–39 (8th Cir. 1990).

We agree with the appellees that the case is moot because no court, in reversing the bankruptcy court's order denying the motions to assume and assign, would order the sale to Edwards to proceed. First, GM and the Chapter 7 trustee have stipulated that the GM dealership agreement, which by its terms was set to expire in October 2015, has terminated. Even if, because of Iowa law, the GM dealership agreement has not been terminated, as James argues, it appears that the Chapter 7 trustee has rejected both dealership agreements by not assuming them within 60 days after conversion to Chapter 7, and James provides no convincing argument or authority showing otherwise. *See* 11 U.S.C. § 365(d)(1). Second, the parties to the sales agreement—the debtors and Edwards—are no longer pursuing the sale. Edwards has said repeatedly that it no longer wishes to consummate the transaction. The debtors have returned Edwards's deposit without objection, and neither they nor the Chapter 7 trustee appealed the bankruptcy court order denying the motions to assume and assign or the district court's order dismissing James's appeal. Neither party to the purchase agreement shows any interest in it being resuscitated.

Although James intimated before the district court that he wanted an order requiring the purchase agreement to proceed, he has not told us that he seeks that relief. Instead, he maintains that the presence of potential breach-of-contract claims saves this case from mootness. *See In re Kmart Corp.*, 434 F.3d 536, 538 (7th Cir. 2006). In *Kmart*, a bankruptcy court allowed a debtor to assume a contract, and when the other party to the contract terminated it soon afterward, the debtor sued the other party in state court for breach of contract. Meanwhile, the other party appealed the bankruptcy court's ruling allowing the assumption, but the debtor argued that the other party had mooted the appeal by terminating the contract. The Seventh Circuit held that a controversy remained because the debtor wanted damages for breach of contract, and that claim would be tenable only if the debtor had properly assumed the contract. In other words, the outcome of the ancillary state proceeding depended on the outcome of the appeal at issue. The court concluded the discussion by noting, "As long as the [state] litigation is pending, and there is a risk that [the other party] may

be called on to pay damages for breach of a contract that, it contends, was not properly assumed in bankruptcy, there is a live controversy in the federal forum." *Id.* at 540.

*Kmart* is not apposite because there are no contract claims currently pending, and we have detected no indication that the Chapter 7 trustee, whom James acknowledges would have to bring any such claim on behalf of the debtors, is considering doing so. In fact, all signs are to the contrary: The Chapter 7 trustee has not joined in either of James's appeals, has rejected the dealership contracts on which any breach-of-contract claims against Ford or GM would have been based, and did not object to returning Edwards's deposit. In short, we think that speculation that the estate might assert contract claims against Edwards, Ford, or GM cannot rescue this case from mootness.

James also argues that potential contract claims against the estate by Edwards, Ford, or GM saves this case from mootness, relying on *Cinicola v. Scharffenberger*, 248 F.3d 110, 116–19 (3d Cir. 2001). There, a group of physicians appealed a bankruptcy court order allowing the Chapter 7 trustee to assume and assign the physicians' employment contracts. The physicians resigned from their employment following the entry of this order, but the assignee informed them that it would enforce the non-compete provisions in the employment contracts. The assignee and the Chapter 7 trustee argued that the physicians' appeal was moot, but the court disagreed. The court explained that, because the covenants not to compete may have survived the physicians' resignation and the assignee intended to enforce them, there was a live case or controversy given that the assignee could not enforce the covenants if the assignment was vacated. Further, since the only alternative to assumption would be rejection of the physicians' contracts, and rejection constitutes a breach of contract, the physicians might well have a claim for damages.

Here, we do not have a potentially surviving provision of the contracts governing the parties' behavior as the non-compete agreements in *Cinicola* did. Neither Ford nor GM has indicated a desire to assert any claims against the debtors, nor does James indicate what they might be; the manufacturers seem intent on ending this matter for good. Edwards, moreover, has not been relying on a theory that the debtors breached the purchase agreement; rather, Edwards terminated that agreement because certain conditions precedent did not occur. We therefore conclude that the contract claims against the estate that James hypothesizes are too speculative for Article III purposes, and so nothing of practical consequence turns on the outcome of this appeal. *See Smith*, 921 F.2d at 138–39.

James finally maintains that, should we decide to dismiss the appeal as moot, we should vacate the bankruptcy court's order denying the motions to assume and assign. Courts disposing of cases that become moot while on appeal not uncommonly vacate the order being appealed to clear the path for relitigation of the issues between the parties and eliminate a judgment. *Robinson v. Pfizer, Inc.*, 855 F.3d 893, 898 (8th Cir. 2017). On the other hand, vacatur is a remedy informed by equitable considerations, and courts are reluctant to order one if the losing party fails to protect its rights when post-order events will likely moot an appeal. *See Cmty. Stabilization Project v. Martinez*, 31 F. App'x 340, 342 (8th Cir. 2002) (per curiam).

*In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1198 (10th Cir. 1999) is particularly instructive. There, the court refused to vacate a bankruptcy court order that became moot on appeal when the appealing party failed to seek a stay of the order and other parties had taken significant steps in reliance on it. We find the decision persuasive and conclude that vacatur would be inequitable here given that James failed to seek a stay pending appeal and that several people have since taken steps in reliance on the bankruptcy court's order. For example, a third party has purchased one of the parcels of real property where the dealerships had operated and has opened a new business there; a secured creditor has foreclosed on inventory; the

bankruptcy has been converted to Chapter 7; and the dealerships have closed. We decline to grant vacatur in these circumstances.

We dismiss the appeal and deny all pending motions for an award of costs and attorney's fees.

_____